The BUBBLE ROOM, INC., Plaintiff,

v.

UNITED STATES, Defendant.

No. 94–616T.

United States Court of Federal Claims.

Oct. 21, 1996.

James L. Malone III, McDermott, Will & Emery, Chicago, IL, for plaintiff.

G. Robson Stewart, with whom were Mildred L. Seidman, Chief, Court of Claims Section, and Loretta C. Argrett, Assistant Attorney General, Tax Division, Department of Justice, for defendant.

## OPINION

HORN, Judge.

The above-captioned case comes before the court on the parties' cross-motions for summary judgment, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). The plaintiff, Bubble Room, Inc. (Bubble Room), alleges in its complaint that the defendant, the United States, acting through the United States Department of the Treasury, Internal Revenue Service (IRS), improperly assessed and collected an employer only Federal Insurance Contribution Act (FICA) tax against the plaintiff, Bubble Room, based on an aggregate estimate made by the IRS of tips allegedly received by plaintiff's employees in the calendar year 1989.

Plaintiff argues that defendant's use of an aggregate estimate, in accordance with the so-called "McQuatters" formula,[1] conflicts with the "fundamental premise of the Social Security System that FICA taxes are paid in order to ensure that covered workers ultimately receive Social Security benefits." During the course of the proceedings, the plaintiff also alleged that the IRS does not have authority pursuant to 26 U.S.C. § 3121(q)[2] (1994) to impose an employer only, FICA tax on aggregate estimated employee tips because it goes against the intent of Congress. In its cross-motion for summary judgment, the defendant alleges that the plaintiff has failed to meet its burden of proof, which, according to the defendant, requires a showing that the challenged FICA tax assessment was erroneous and that those taxes, in fact, were overpaid. The defendant maintains that the IRS is authorized by I.R.C. § 3121(q) to assess an employer only, FICA tax based on an aggregate estimate of tips allegedly received by employees, in the absence of an assessment on individual employees, that the defendant's interpretation is consistent with the legislative history of I.R.C. § 3121(q), and that the tax assessed against the plaintiff was reasonable.

After careful consideration of the record, the filings submitted by the parties, and the relevant law, this court determines that the plaintiff's motion for summary judgment should be granted and the defendant's cross-motion for summary judgment should be denied.

## FACTS

Plaintiff, Bubble Room, is a Delaware corporation with its principal place of business in Orange City, Florida. During 1989, the year during which the tips were allegedly underreported, the plaintiff operated two full-service restaurants in Maitland and Captiva, Florida. During 1989, the plaintiff employed eighty-seven (87) tipped employees at its Maitland restaurant and seventy-two (72) tipped employees at its Captiva restaurant. Some of these tipped employees only worked a portion of 1989.

Plaintiff has brought this test case seeking a tax refund for overpayment of FICA taxes on tip income which the defendant alleges was received by plaintiff's employees during the tax year ending December 31, 1989.[3] In its complaint, plaintiff seeks recovery of FICA taxes in the amount of thirty-one thousand, seven hundred ninety dollars ($31,-790.00), and interest in the amount of five thousand, four hundred seventy-nine dollars and thirty-eight cents ($5,479.38), plus interest, as well as appropriate costs and fees, to which it is entitled under law.

The plaintiff's waiters, waitresses, dessert servers, busboys, and bartenders received

---

1. The "McQuatters" formula refers to the formula used in *McQuatters v. Commissioner*, 32 TCM (CCH) 1122, 1973 WL 2419 (1973), which is discussed more fully later in the opinion.

2. References to the Internal Revenue Code (I.R.C.) are to Title 26 of the United States Code. In addition, references to the Treasury Regulations are to Title 26 of the Code of Federal Regulations (C.F.R.).

3. The tip income in this case allegedly was received by the employees in 1989, however, the "Notice and Demand" statement and the assessment of additional employer FICA tax, issued by the IRS pursuant to I.R.C. § 3121(q), was not made until October 28, 1991. Under the statute, for the purposes of determining employer's liability in cases in which tips are underreported or unreported, remuneration is deemed paid on the date on which the "Notice and Demand" statement for the taxes is made to the employer by the IRS.

hourly wages from the plaintiff and voluntary extra payments, *i.e.,* tips, from many of the customers they served. The Bubble Room did not have a mandatory tipping policy, even for large parties. Cash tips were paid directly by Bubble Room customers to the waiters and waitresses. Unless a tip was charged to a credit card, the Bubble Room did not know whether a customer paid a cash tip and, if so, the amount of that tip. Consequently, the Bubble Room does not have information regarding the number of occasions when its customers did not leave a tip. Moreover, in 1989, the Bubble Room had a "tip-out" system, whereby waiters and waitresses shared their tips with other Bubble Room service employees, *i.e.,* bartenders, busboys, and dessert servers, who were not directly tipped. This was an informal system, and, therefore, there are no exact figures on how much was tipped-out by individual employees.

During 1989, the I.R.C. and its implementing regulations imposed certain reporting requirements on restaurant-employers and tipped employees when tip income received by an employee exceeded twenty dollars ($20.00) during any given month. *See* I.R.C. § 6053(a) and (c) (1994); Treas.Reg. § 31.6053–3(j)(11) (1996). Plaintiff complied with these tip reporting requirements to the extent that its employees reported tips to the plaintiff. Plaintiff also informed its tipped employees that the I.R.C. and its implementing regulations required that restaurant employees report tip income to the employer no later than ten (10) days after the end of the preceding month, and that the reporting could be accomplished by filing a Form 4070 ("Employee's Report of Tips to Employer"), or a similar written substitute, with the employer. *See* I.R.C. § 6053(a); Treas.Reg. § 31.6053–1(a)–(c) (1996). Additionally, employees were informed that they were required to report all tip income received on Form 1040 ("U.S. Individual Income Tax Return"). In 1989, the plaintiff also distributed an "Employee Policy Manual" to its employees, which outlined the employees' responsibilities for complying with IRS income reporting rules. The Employee Policy Manual informed employees that tips were taxable wages and that it was plaintiff's policy to

require both its directly and indirectly tipped employees to comply with I.R.C. § 6053(a) by reporting one hundred percent (100%) of their tip income to the plaintiff. Moreover, on February 3, 1989, plaintiff sent correspondence to its employees requesting that they acknowledge in writing their obligation to report one hundred percent (100%) of their tip income to the plaintiff and to the IRS.

Furthermore, during 1989, as part of the plaintiff's computerized check-out process, the plaintiff implemented a procedure requiring tipped employees to report their tip income to the plaintiff on a daily basis. The daily information provided by the employees was reviewed on a weekly basis by plaintiff's managers to ensure compliance. At the end of the year, the information provided by the employees was used to prepare the employees' W–2 Forms, furnished by the employer to the employee, and to calculate the proper employer and employee FICA taxes.

On February 26, 1990, the plaintiff filed IRS Form 8027 ("Employer's Annual Information Return of Tip Income and Allocated Tips") for the 1989 calendar year. Based on the information supplied to the employer by the employees, the form, as filed by the plaintiff, reported $647,159.50 in employee tip income, charged tips in the amount of $597,242.21, and an estimate of charged receipts in the amount of $3,667,927.28. Gross receipts for 1989 were reported in the amount of $7,336,685.81.

Plaintiff also filed IRS Form 941 ("Employer's Quarterly Federal Tax Return") for the four calendar quarters of 1989, and W–2 Forms ("Wage and Tax Statement") for 1989 for each of its tipped employees. On these 941 and W–2 Forms, plaintiff reported wages actually paid and tip income reported to plaintiff by its employees.

By letter, dated December 31, 1990, plaintiff was notified by the IRS that it had been selected for an IRS compliance check focusing on tip income reporting. The compliance check was performed by an IRS agent on January 7–8, 1991, and focused on tax year 1989. On January 8, 1991, the IRS agent conducting the compliance check orally requested that plaintiff pay, in the first quarter

of 1991, the employer's share of FICA taxes relating to tips allegedly received in 1989 by plaintiff's tipped employees, but not reported to plaintiff.

By a "Notice and Demand" letter, dated October 28, 1991, plaintiff was formally notified of the IRS determination that the plaintiff's "tipped personnel were not reporting all the tips they received." The IRS agent calculated the additional employer FICA taxes due (computed at 7.51%)[4] on the allegedly unreported tips to be $31,790.00. The FICA tax assessment was based on the IRS estimate of the aggregate tip income earned during 1989 by all of plaintiff's tipped employees.

To calculate the aggregate estimated tip income, the IRS first reviewed the Form 8027 filed by Bubble Room for 1989. The IRS then applied the McQuatters Formula to the charged tip rate[5] for 1989 to determine the total tip rate. The charged tip rate was computed by dividing the total charged tips for a random sample of 28 days in 1989, by the total charged sales for the sample 28 days. The random sample of 28 days in 1989 was selected by an IRS computer audit specialist. The IRS, however, did not maintain records indicating which days in calendar year 1989 were used for the compliance sample.

The IRS agent calculated the charged tip rate to be 14.6 percent of the cost of a meal. The agent assumed that the cash tip rate paid to plaintiff's employees was the same as the calculated charged tip rate of 14.6 percent. The agent then applied the 14.6 percent tip rate for charged meals to the total gross receipts reported by the plaintiff in 1989, adjusted for stiffs,[6] to calculate a total cash and credit tip amount for 1989. As a result, the IRS agent calculated, under the McQuatters formula, that the average server employed by the plaintiff in 1989 earned $9.36 in tips per hour.

The IRS agent, however, excluded charged meals which did not have a tip because the tip, if any, was determined to be unknown, and did not take into account the approximately three percent (3%) fee assessed by credit card companies for credit card charges, and which the plaintiff withheld from tips paid to servers on those credit card charges. Furthermore, the IRS agent did not attempt to determine a "no-tip" rate, i.e., the number of customers who did not pay a tip although they did pay for their meal.

In the instant case, the assessment made on the plaintiff by the IRS was based on an aggregate estimate of the amount of employees' unreported tips. It was not based on individual or estimated individual assessments, nor was the assessment on the plaintiff employer based on collections of FICA taxes from plaintiff's tipped employees. Furthermore, the IRS had not performed any audits of individual tipped employees who worked at the Bubble Room in 1989, as part of the compliance check on the Bubble Room. During the course of the audit of the plaintiff, the IRS agent interviewed only ten (10) waiters and waitresses at the Maitland, Florida restaurant. Of those ten (10) employees interviewed, apparently only two (2) had worked at the Bubble Room in 1989. The Bubble Room's turnover rate of service employees in 1989 was typical for the restaurant industry. Moreover, the IRS has declined to provide the plaintiff with access to individual income tax returns of the employees who worked at the Bubble Room during 1989.

4. In 1989, the old-age, survivors and disability insurance tax rate applicable to employers was 6.06% (I.R.C § 3111(a)), and the Hospital Insurance tax rate applicable to employers was 1.45% (I.R.C. § 3111(b)), for a combined FICA tax rate of 7.51%.

5. The charged tip rate refers to the tip rate computed on bills that were charged by customers to credit cards.

6. In the Joint Stipulation of Facts, those nonpaying customers who left the Bubble Room without paying for their meal or leaving a tip, are referred to by the parties as "stiffs." The Bubble Room did not keep any records of the number of stiffs, or the amount they failed to pay. The IRS agent estimated that the number of "stiffs" amounted to $4,784.00 in meals and tips for 1989, and subtracted this amount from the Bubble Room's reported, total gross receipts, $7,336,686.00, for food and beverage operations for 1989, prior to calculating the aggregate estimated tip rate on the adjusted gross receipts total of $7,331,902.00.

In 1992, the agent who audited the plaintiff also performed an independent audit of Thomas Filiault, an employee of the Bubble Room during 1989. At the conclusion of Mr. Filiault's audit, the IRS sent Mr. Filiault a letter adjusting his tip rate and stating that he should have earned $8.56 in tips per hour in 1989. The IRS agent does not recall why she used a different tip rate for the Filiault tax assessment, from the $9.36 tips per hour rate she computed in connection with the plaintiff's audit.

On October 19, 1992, the IRS issued a 30–day letter to plaintiff Bubble Room regarding the additional FICA tax liability for the calendar quarter ending December 31, 1991. The plaintiff protested the proposed FICA tax assessment set forth in the October 19, 1992 letter. A conference was held with the Appeals Division of the IRS on April 27, 1993 regarding the additional tax assessment. On January 11, 1994, the IRS informed the plaintiff that its protest had been rejected, except that the proposed I.R.C. § 6662 penalty was eliminated.

On April 7, 1994, plaintiff paid the IRS assessed FICA taxes and interest totalling $37,269.38. The assessment was for tip income allegedly earned by plaintiff's employees in 1989, but not reported to the plaintiff or the IRS. The additional FICA tax was assessed in the last quarter of 1991, under I.R.C. § 3121(q), because, as indicated above, the statute states that "such remuneration shall be deemed for purposes of subtitle F to be paid on the date on which notice and demand for such taxes is made to the employer by the Secretary." I.R.C. § 3121(q).

On June 7, 1994, the IRS received the plaintiff's Claim for Refund, IRS Form 843. On August 12, 1994, the IRS notified the plaintiff that its claim for a refund with respect to the additional FICA tax liability was denied. On September 21, 1994, the plaintiff filed the complaint in the above-captioned case.

## DISCUSSION

■ Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar in language and effect.[7] Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Rule 56(c) provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of demonstrating that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Creppel v. United States*, 41 F.3d 627, 630–31 (Fed.Cir.1994); *Meyers v. Asics Corp.*, 974 F.2d 1304, 1306 (Fed.Cir.1992); *Rust Communications Group, Inc. v. United States*, 20 Cl.Ct. 392, 394 (1990); *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), *aff'd*, 944 F.2d 885 (Fed.Cir.1991). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury [trier of fact] could return a verdict for the non moving party." *Id.; see also Uniq Computer Corp. v. United States*, 20 Cl.Ct. 222, 228–29 (1990).

When reaching a summary judgment determination, the judge's function is not to

7. In general, the rules of this court are patterned on the Federal Rules of Civil Procedure. Therefore, precedent under the Federal Rules of Civil Procedure is relevant to interpreting the rules of this court, including RCFC 56. *See Jay v. Sec'y DHHS*, 998 F.2d 979, 982 (Fed.Cir.1993); *Imperial Van Lines Int'l, Inc. v. United States*, 821 F.2d 634, 637 (Fed.Cir.1987); *Lichtefeld–Massaro, Inc. v. United States*, 17 Cl.Ct. 67, 70 (1989).

weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. at 2510–11; *see, e.g., Cloutier v. United States,* 19 Cl.Ct. 326, 328 (1990), *aff'd without op.,* 937 F.2d 622 (Fed.Cir. 1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. at 2511–12. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Stated otherwise, if the nonmoving party cannot present the evidence to support its case under any scenario, then there should be no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985); *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

The initial burden on the party moving for summary judgment, to produce evidence showing the absence of a genuine issue of material fact, may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *see also Lima Surgical Assocs.,* 20 Cl.Ct. at 679. If the moving party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by pre-senting evidence which establishes the existence of an element of its case upon which it bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552; *Lima Surgical Assocs.,* 20 Cl.Ct. at 679.

Pursuant to Rule 56, the motion for summary judgment may succeed, whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553. Generally, however, in order to prevail, the nonmoving party will need to go beyond the pleadings, by use of evidence such as affidavits, depositions, answers to interrogatories, and admissions, in order to demonstrate that a genuine issue for trial exists. *Id.*

■ In the above-captioned case, the fact that both the parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, does not relieve the court of its responsibility to determine the appropriateness of summary disposition in the particular case. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987)). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.*, 401 F.2d 689, 692 (4th Cir.1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *see also Levine v. Fairleigh Dickinson Univ.,* 646 F.2d 825, 833 (3d Cir.1981); *Home Ins. Co. v. Aetna Casualty & Sur. Co.,* 528 F.2d 1388, 1390 (2d Cir.1976). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir.1968); *Bataco Indus., Inc. v. United States,* 29 Fed. Cl. 318, 322 (1993), *aff'd,* 31 F.3d 1176 (Fed. Cir.1994). The court must evaluate each party's motion on its own merit, taking care to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc.,* 812 F.2d at 1391.

In the above-captioned case, the court agrees with the parties that there are no genuine issues of material fact in dispute and that this case is ripe for summary disposition. In the instant case, the issue is whether an employer only FICA tax can be assessed, pursuant to I.R.C. § 3111 (1994) and I.R.C. § 3121(q), based on unreported tips allegedly received by the plaintiff's employees, and calculated using an aggregate estimate, in the absence of corresponding tax assessments against the employees, and without awarding corresponding wage credits to the employees' wage history accounts maintained by the Social Security Administration.

In a tax refund case, there is a strong presumption of the correctness of the findings of the Commissioner of Internal Revenue. *Lima Surgical Assocs., Inc. v. United States,* 944 F.2d 885, 888 (Fed.Cir. 1991). The taxpayer not only has the burden of rebutting that presumption, but also of establishing entitlement to the specific amount of the deduction claimed. *United States v. Janis,* 428 U.S. 433, 440–41, 96 S.Ct. 3021, 3025–26, 49 L.Ed.2d 1046 (1976); *Helvering v. Taylor,* 293 U.S. 507, 514, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1935); *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Danville Plywood Corp. v. United States,* 899 F.2d 3, 7–8 (Fed.Cir. 1990); *Barenholtz v. United States,* 784 F.2d 375, 381 (Fed.Cir.1986); *Young & Rubicam, Inc. v. United States,* 187 Ct.Cl. 635, 654–55, 410 F.2d 1233, 1244–45 (1969); *L.W. Hardy Co. v. United States,* 1 Cl.Ct. 465, 470 (1982). In order to overcome the presumption, the taxpayer has the burden of presenting "substantial evidence as to the wrongfulness of the Commissioner's determination." *KFOX, Inc. v. United States,* 206 Ct.Cl. 143, 151–52, 510 F.2d 1365, 1369 (1975); *Arrington v. United States,* 34 Fed.Cl. 144, 147 (1995). The burden imposed on a plaintiff is both the burden of going forward and the burden of persuasion. A plaintiff first must come forward with enough evidence to support a finding contrary to the Commissioner's determination. *Transamerica Corp. v. United*

States, 902 F.2d 1540, 1543 (Fed.Cir.1990); *Danville Plywood Corp. v. United States,* 899 F.2d at 7–8; *Arrington v. United States,* 34 Fed.Cl. at 147. Even after satisfying the burden of going forward, a plaintiff must still carry the ultimate burden of proof. *Transamerica Corp. v. United States,* 902 F.2d at 1543; *Danville Plywood Corp. v. United States,* 899 F.2d at 8.

In the instant case, in order to overcome the presumption of correctness, the plaintiff has the burden of proving that the tax assessment was not justified and was improperly assessed by the IRS. In addition, the defendant argues that the plaintiff has the burden of proving whether all, or which portion, of the $31,790.00 FICA tax assessment was inaccurate, and whether the interest assessed by the IRS was improper. In response, the plaintiff contends that the statutes do not allow the IRS to assess an employer only FICA tax on aggregate, estimated tips, and, as a result, that the entire tax assessment was unjustified.

To fully comprehend the employee and the employer responsibilities with regard to the payment of FICA taxes, it is necessary to review briefly the applicable, interrelated statutes. In I.R.C. § 3101(a) and (b), the Tax Code sets out the individual employee FICA tax rates on wages to cover (a) Old-age, Survivors, and Disability Insurance ("OSDI") and (b) Hospital Insurance. I.R.C. § 3101(a) & (b) (1994). Furthermore, I.R.C. § 3111(a) and (b) impose an employer FICA tax on the wages earned by employees. The employer FICA tax is equivalent to the employee FICA tax set out in I.R.C. § 3101. I.R.C. § 3111(a) & (b) (1994).

I.R.C. § 3102(a) through (c) sets out the requirements for employers to withhold and collect FICA taxes from employee wages. Specifically, I.R.C. § 3102(c) outlines the rule for the collection of FICA taxes on tip income. Under I.R.C. § 3102(c), employers are required to deduct taxes on tip wages which are reported to the employer in a written statement furnished by the employee.[8] I.R.C. § 3102(c)(1) states:

---

**8.** The information furnished to the employer by the employee is then used to prepare Form 8027

("Employer's Annual Information Return of Tip Income and Allocated Tips").

**(c) Special rule for tips**

(1) In the case of tips which constitute wages, subsection (a) shall be applicable only to such tips as are included in a written statement furnished to the employer pursuant to section 6053(a), and only to the extent that collection can be made by the employer, at or after the time such statement is so furnished and before the close of the 10th day following the calendar month (or, if paragraph (3) applies, the 30th day following the year) in which the tips were deemed paid, by deducting the amount of the tax from such wages of the employee (excluding tips, but including funds turned over by the employee to the employer pursuant to paragraph (2)) as are under control of the employer.

I.R.C. § 3102(c) (1994); *see also* Treas.Reg. § 31.3102–3 (1996).

I.R.C. § 3121(a) defines "wages" to include "all remuneration for employment," but then lists numerous exceptions to what is covered. Specifically, non-cash tips are excluded by I.R.C. § 3121(a)(12)(A). Additionally, cash tips of less than $20.00 per month are excluded by I.R.C. § 3121(a)(12)(B). I.R.C. § 6053(a) requires all employees to report tips received to their employers by the tenth day of the month following the month in which the tips were received. I.R.C. § 6053(a); *see also* Treas.Reg. § 31.6053–1(a) (1996).

I.R.C. § 3121(q) defines tips as remuneration for both employers and employees and sets calculation dates for when those tips are to be considered paid. I.R.C. § 3121(q) reads:

**(q) Tips Included for both employee and employer taxes**

For purposes of this chapter, tips received by an employee in the course of his employment shall be considered remuneration for such employment *(and deemed to have been paid by the employer for purposes of subsections (a) and (b) of section 3111).* Such remuneration shall be deemed to be paid at the time a written statement including such tips is furnished to the employer pursuant to section 6053(a) or (if no statement including such tips is so furnished) at the time received; *except that, in determining the employer's*

*liability in connection with the taxes imposed by section 3111 with respect to such tips in any case where no statement including such tips was so furnished (or to the extent that the statement so furnished was inaccurate or incomplete), such remuneration shall be deemed for purposes of subtitle F to be paid on the date on which notice and demand for such taxes is made to the employer by the Secretary.*

I.R.C. § 3121(q) (emphasis added). Specifically, it is the interpretation of the above, underlined text which is in dispute in this case. I.R.C. § 3121(q) was amended, and the underlined text was added, by section 9006(a) of the Omnibus Budget Reconciliation Act of 1987. Omnibus Budget Reconciliation Act of 1987, Title IX, § 9006(a), Pub.L. No. 100–203, 101 Stat. 1330, 1330–288–289; *see* I.R.C. § 3121(q) (1987).

When determining the purpose and intent of I.R.C. § 3121(q), this court is guided by the following words of the United States Court of Appeals for the Federal Circuit regarding how to approach issues of statutory interpretation:

Statutory construction requires the application of recognized rules. *See generally Sutherland Statutory Construction* (4th ed.). First, " ' "[t]he starting point in every case involving construction of a statute is the language itself." ' " *Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978). Second, where a statute states what a term "means" then all other meanings not stated are excluded. *Colautti v. Franklin,* 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 684, n. 10, 58 L.Ed.2d 596 (1979). Third, clear evidence of legislative intent prevails over other principles of statutory construction. *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). Fourth, absent a very clear legislative intent, the plain meaning will prevail. *Aaron v. SEC,* 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980). Last, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-

enacts a statute without change." *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978); *National Lead Co. v. United States,* 252 U.S. 140, 146–47, 40 S.Ct. 237, 239, 64 L.Ed. 496 (1920); *Farrell Lines, Inc. v. United States,* 499 F.2d 587, 605, 204 Ct.Cl. 482 (1974); *cf. Pierce v. Underwood,* [487] U.S. [552], 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

*Johns–Manville Corp. v. United States,* 855 F.2d 1556, 1559 (Fed.Cir.1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). Moreover, if a statute is plain and unequivocal on its face, there is no need to resort to the legislative history underlying the statute. *Reid v. Department of Commerce,* 793 F.2d 277, 281 (Fed.Cir.1986) (citing *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 1280–81, 6 L.Ed.2d 575 (1961), *reh'g denied,* 368 U.S. 870, 82 S.Ct. 24, 7 L.Ed.2d 70 (1961)). A court should resort to legislative history only if:

> ... a literal interpretation would lead to an incongruous result. For example, if a literal reading of the statute would impute to Congress an irrational purpose, *United States v. Bryan,* 339 U.S. 323, 338, 70 S.Ct. 724, 734, 94 L.Ed. 884 (1950), or would thwart the obvious purpose of the statute, [*In re*] *Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978), or would lead to a result at variance with the policy of the legislation as a whole, *Trustees of Indiana University v. United States,* 618 F.2d 736, 739, 223 Ct.Cl. 88, 94 (1980), then literal interpretation will be eschewed in favor of resort to the legislative history to ascertain the intent of Congress. *United States v. Oregon,* 366 U.S. at 648, 81 S.Ct. at 1281; 2A Sands § 46.07.

*Reid v. Department of Commerce,* 793 F.2d at 281–82. Accepted principles of statutory construction also provide that courts must interpret a statute as a whole. *Beecham v. United States,* 511 U.S. 368, ——, 114 S.Ct. 1669, 1671, 128 L.Ed.2d 383 (1994) (citing *Massachusetts v. Morash,* 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989)). To this effect, the Supreme Court has written:

On numerous occasions we have noted that " ' " '[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.' " ' " *Kelly v. Robinson,* 479 U.S. 36, 43 [107 S.Ct. 353, 357–58, 93 L.Ed.2d 216] (1986), quoting *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 221 [106 S.Ct. 2485, 2493, 91 L.Ed.2d 174] (1986) (quoting *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 285 [76 S.Ct. 349, 359, 100 L.Ed. 309] (1956) (in turn quoting *United States v. Heirs of Boisdore,* [49 U.S. 113, 122] 8 How. 113, 122 [12 L.Ed. 1009] (1849))).

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987); *see* Sutherland Stat.Const. §§ 46.05, 46.06 (5th ed. 1992). Otherwise stated, courts must " 'give effect, if possible, to every clause and word of a statute,' " *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) (quoting *Inhabitants of the Township of Montclair v. Ramsdell,* 107 U.S. 147, 152, 2 S.Ct. 391, 395, 27 L.Ed. 431 (1883)), for " '[t]he cardinal principle of statutory construction is to save and not to destroy.' " *Id.* (quoting *N.L.R.B. v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 30, 57 S.Ct. 615, 621, 81 L.Ed. 893 (1937)).

■ In construing a statute, courts should attempt not to interpret a provision such that it renders other provisions of the same statute inconsistent, meaningless, or superfluous. *Boise Cascade Corp. v. United States E.P.A.,* 942 F.2d 1427, 1432 (9th Cir. 1991); *see* Sutherland Stat.Const. § 46.06 (5th ed. 1992). The meaning of statutory language depends on context, and a statute should be read as a whole. *Bailey v. United States,* —— U.S. ——, ——, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995); *King v. Saint Vincent's Hosp.,* 502 U.S. 215, 221, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991) (Souter, J.) (citing *Shell Oil Co. v. Iowa Dept. of Revenue,* 488 U.S. 19, 26, 109 S.Ct. 278, 282, 102 L.Ed.2d 186 (1988)). As stated in *King v. Saint Vincent's Hospital,* "[w]ords are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport

from the setting in which they are used." *King v. Saint Vincent's Hosp.*, 502 U.S. at 221, 112 S.Ct. at 574 (quoting *N.L.R.B. v. Federbush Co.*, 121 F.2d 954, 957 (2nd Cir. 1941) (L. Hand, J.)). Therefore, when reviewing the statute at issue in this case, this court must construe each part of a statute in connection with all the other sections, so as to produce a harmonious whole. Moreover, common sense requires that the same words used twice in the same act should have the same meaning. *See* Sutherland Stat.Const. § 46.06 (5th ed. 1992).

■■■ Defendant alleges that the language of I.R.C. § 3121(q) does not limit employer FICA tax liability to the amount of FICA taxes paid by individual employees. Defendant also argues that plaintiff's attempt to use the legislative history to explain the statute as prohibiting an employer only assessment on an aggregate estimate of unreported employee tip income is inappropriate. The IRS contends that I.R.C. § 3121(q) was amended by Congress to expand employer liability, and that the language of the statute does not prevent the IRS from assessing an employer only FICA tax. The language of I.R.C. § 3121(q), however, is silent regarding whether the IRS can or should impose an employer only FICA tax based on an aggregate estimate of unreported tips allegedly earned by the plaintiff's employees, in the absence of imposing similar tax liability on the individual employees for tips earned. Rather, I.R.C. § 3121(q) establishes that tips received by an employee shall be considered wages received for employment, and addresses the date on which the wages shall be deemed to have been paid for the purposes of determining employer liability imposed by I.R.C. § 3111. Although the defendant is correct that the language of I.R.C. § 3121(q) does not prohibit imposing an employer only FICA tax, the absence of a prohibition alone should not establish the authority of the IRS to do so, especially in light of the interrelated taxing provisions discussed in this opinion. Given the absence of specific statutory direction, it is appropriate to refer to legislative history in order to understand the intent of Congress.

As indicated above, the first sentence of I.R.C. § 3121(q) states that tips received by an employee are considered remuneration for employment and are deemed to have been paid by the employer for purposes of I.R.C. § 3111(a) and (b). Also, as indicated above, I.R.C. § 3111(a) and (b) sets out the employer FICA tax rates required to be withheld from "wages" paid by the employer with respect to "employment."[9] I.R.C. § 3121(a) defines "wages" as all remuneration for employment, except that I.R.C. § 3121(a)(12)(A) excludes tips paid in any medium other than cash, and I.R.C. § 3121(a)(12)(B) excludes cash tips which do not exceed $20.00, received by an employee in any calendar month in the course of his/her employment. The 1987 Amendments to the first sentence of I.R.C. § 3121(q) expanded the employer's tax base for the purposes of calculating the employer's liability. The amendments required employers to include in the FICA tax calculation tips received by their employees, not just the excess of the federal minimum wage rate over the rate paid by the employer as previously required. *See also* Jacquin D. Bierman, *FICA Tax Coverage Extended by 1987 Act*, 68 J. Tax'n 226 (1988). The words of the first sentence in I.R.C. § 3121(q), however, do not address whether the IRS can assess an employer only tax on an aggregate estimate of tips allegedly received, and whether the IRS can or should assess an employer for a tax on an aggregate estimate of allegedly unreported employee tips, without causing a similar assessment to be made on the employee.

The second, much longer, sentence of I.R.C. § 3121(q), establishes the dates on which tip income is considered to be earned for purposes of determining employer liability. For both the employer and the employee, the statute states that remuneration is deemed to have been paid when the employee provides the employer with a written statement detailing the amount of tips earned, or if no such statement is furnished, at the time the tips are received by the employee. For the employer, however, the last part of the second sentence elaborates further and states that when determining the

9. The term "employment" is defined in I.R.C. § 3121(b).

employer's liability, if no statement has been provided by the employee, or the statement furnished was inaccurate or incomplete, then such remuneration is deemed to have been paid on the date when the IRS issues a "Notice and Demand" statement to the employer. I.R.C. § 3121(q). At issue in the above-captioned case, therefore, is whether the words "deemed to have been paid by the employer" in the first sentence of I.R.C. § 3121(q), and/or the exception in the second sentence of I.R.C. § 3121(q), which addresses determining the date of the "employer's liability" for the purposes of subtitle F of the I.R.C.,[10] allow the IRS to assess a FICA tax solely against the employer for aggregate estimates of allegedly unreported employee tips by issuing the Notice and Demand statement, without assessing a corresponding tax against the individual employees who allegedly earned the tips.

The court believes that because this was filed as a test case, it is useful to set out the parameters of the debate in the words of the parties. Defendant offers its arguments and interpretation of the amendments to I.R.C. § 3121(q) as follows:

> The cumulative effect of the ... amendment to § 3121(q) on the restaurant industry is dramatic. Where formerly restaurants had only limited responsibility for payment of employer FICA tax for tipped employees (up to the amount of the minimum wage), now they must withhold and pay *both* portions of the FICA tax: employer FICA and employee FICA (up to the amount of wages paid to employees, including all tips). This is the effect of the parenthetical phrase "(and deemed to have been paid by the employer for purposes of subsections (a) and (b) of section 3111)." Also, prior to 1988, employees' underreporting of tip income to restaurants had minimal impact on the restaurants' obligation to pay FICA tax, as restaurants paid employer FICA tax only on tip income up to the minimum wage. Now payment of employer FICA tax represents an additional expense of the restaurant-employer.

In drafting § 3121(q), Congress specifically mandated the assessment of employer-only FICA tax when employees do not accurately report tips to the employer. The clause beginning *"except that ..."* authorizes the IRS to issue a notice and demand for employer FICA tax in cases where no employee statement was furnished or where the statement was inaccurate or incomplete. The fact that this clause was added, in conjunction with the extension of the restaurants' responsibility to withhold and pay FICA tax on all employee tips, indicates that Congress was especially concerned about the problem of employee underreporting of tips and its adverse effect on the collection of both the employer and employee portions of the FICA tax. If Congress had intended to require a concurrent assessment of employee FICA tax against individual employees, it would have explicitly added such a requirement. Another effect of this amendment to § 3121(q) is that the period of limitations *for the assessment of employer FICA tax* may remain open after the limitations period for assessment of employee FICA tax has closed. The statute formerly provided that, for both portions of the FICA tax, tips were deemed paid when reported to the employer or, if no report was furnished, when paid. This is still the rule for the employee portion of the FICA tax. Assuming the employee files a return which is not fraudulent, the normal limitations period for assessment, three or six years, would apply to the employee. § 6501(a) and (e).

For purposes of employer FICA tax, the amendment of § 3121(q) provides, however, that "such remuneration [unreported tips] shall be deemed *for purposes of subtitle F* to be paid on the date on which notice and demand for such taxes is made." Subtitle F contains the procedural and administrative provisions of the Code, including the statute of limitations. Thus, the period of limitations for the assessment of em-

---

**10.** Subtitle F of the I.R.C. refers to Title 26, Subtitle F, Sections 6001, *et seq.*, of the United States Code, titled Procedure and Administration, which includes the section on the time for filing returns and other documents.

ployer FICA is kept open until notice and demand under § 3121(q) is made.

By treating unreported tips as paid on the date of notice and demand, § 3121(q) authorizes assessment and collection of the employer's portion of the FICA tax after the period of limitations for assessment of the employee is closed. The only reasonable implication of this provision is that Congress intended that there could be assessment of employer FICA tax even though employee FICA tax could no longer be assessed.

... It makes no sense to provide specially that the period of limitations shall remain open for purposes of assessment of employer FICA tax, but then to hold that the IRS may not issue to employers notice and demand for employer FICA tax liabilities, except in cases where individual employees are concurrently assessed. Obviously, employees may not be assessed additional FICA tax after the period of limitations which applies to them has expired. In other words, the last clause of § 3121(q) is rendered null and void if employer FICA tax may not be assessed without a corresponding assessment of employee FICA tax against individual employees in all cases. Clearly, this section institutes a procedure for issuance of notice and demand for employer FICA tax on unreported tips, when the period of limitations for assessment of the tipped employees of that employer has closed.

In summary, § 3121(q), as amended in 1987, has a new purpose, to require employers of tipped employees to withhold and pay both the employee and the employer portions of the FICA tax. The final clause adds a new rule providing that when the employee's report of tips was inaccurate, incomplete, or nonexistent, then for purposes of employer FICA tax only, the remuneration is deemed paid on the date of notice and demand. This amendment changes the structure and purpose of § 3121(q), providing for the possibility of asymmetrical treatment of employer and employee FICA.

Plaintiff disagrees with the defendant and states its position, also at length, as follows:

Looking specifically at an employer's FICA tax liability, Section 3121(q) does three things. First, Section 3121(q) provides that "tips received by an employee" shall be considered remuneration and shall be deemed to have been paid by the employer for purposes of Sections 3111(a) and (b). As discussed below, this requires either an individual declaration by an employee or an *individual determination* by the IRS of the "tips received by an employee" in order to generate an employer FICA tax liability.

Second, Section 3121(q) provides that such tips are deemed paid when a written statement including such tips is furnished by the employee to the employer pursuant to Section 6053(a), *supra,* or, if no statement including such tips is furnished, at the time such tips are received by the employee. In the latter case, this rule ensures that the employer's FICA tax liability will be based on the FICA tax rate in effect when the tips were received by the employee.

Third, in the case of employer FICA tax liability, if an employee fails to furnish a statement to the employer (or if the statement is inaccurate or incomplete), Section 3121(q) provides that, for purposes of subtitle F, tips received by an employee are not deemed paid until a valid notice and demand is made by the IRS for the taxes imposed by section 3111 with respect to the tips received by the employee. Until a valid notice and demand is made: (1) the IRS is precluded from making an assessment under Section 6201; (2) the IRS is precluded from collecting any tax under Section 6301; (3) the statute of limitations does not begin to run under Section 6501; and (4) no interest accrues under Section 6601.

\*　　\*　　\*　　\*　　\*　　\*

At issue in this test case is the manner in which the IRS may make an employer FICA tax assessment with respect to tips allegedly received but not reported by tipped employees. The IRS has taken the position that assessment need not be based

on separate, individual determinations of the amount of tips received by each employee but that assessment may instead be based on an aggregate estimate of tips received by all employees.

As discussed below, however, an aggregate estimate is fundamentally inconsistent with the wording of Section 3121(q), the terms and histories of the FICA tax and tip reporting provisions of the Internal Revenue Code, and the Social Security Act. An aggregate estimate is not permitted for the following reasons:

3. Section 3121(q) is exclusively grounded in the singular and provides rules with respect to tips received by "an employee";

4. An aggregate estimate conflicts with the employee-specific FICA tax exceptions contained in Code Sections 3121(a)(1) (no tax if employee's wages exceed the annual wage limitation) and 3121(a)(12)(B) (no tax if employee receives less than $20 of tips in a month);

5. An aggregate estimate conflicts with Congress' reason for enacting Section 3121(q);

6. An aggregate estimate conflicts with the Social Security System's premise of providing wage history credits to match FICA tax payments; and

7. An aggregate estimate conflicts with the tip reporting statutory scheme which places the burden on the IRS, not the employer, to audit an employee if the employee fails to report tips.

For these reasons, the aggregate estimate proffered by the IRS in this case is fundamentally inconsistent with the FICA tax and Social Security statutory scheme.

According to the plaintiff, I.R.C. § 3121(q) is grounded in the singular and, therefore, cannot be interpreted to allow an assessment of an employer only FICA tax based on an aggregate estimate of tips allegedly received by all of an employer's employees. The plaintiff points out that the first sentence in

I.R.C. § 3121(q) "applies with respect to tips received by 'an employee' in the course of 'his [11] employment.'" The court also notes that the first sentence of I.R.C. § 3121(q) begins: "For the purposes of this chapter, tips received by *an employee*." I.R.C. § 3121(q) (emphasis added).

The basic rules of construction included at the beginning of the United States Code, however, state that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise—words importing the singular include and apply to several persons, parties, or things; words importing the plural include the singular...." 1 U.S.C. § 1 (1994); *see also* I.R.C. § 7701(m)(1)(1) (1994) (cross-referencing Title 26 to the Rules of Construction in Title 1). Although I.R.C. § 3121(q), uses the term "an employee," the statute does not indicate specifically that the language or context of this statute should be considered grounded only in the singular. Therefore, plaintiff's argument that I.R.C. § 3121(q) is grounded in the singular is not dispositive without reference to the context of the statute, which is addressed below.

Understanding the meaning of I.R.C. § 3121(q) requires an examination of the interrelationship of the FICA tax scheme, the Social Security system, and I.R.C. § 3121(q). Although tip income has always been subject to income tax liability, tips were not always included in the determination of wage credits on employees' social security accounts. In 1965, Congress amended the law to allow employees' Social Security accounts to be credited for tip income earned. Social Security Amendments of 1965, Pub.L. No. 89–97, Title III, § 313, 79 Stat. 286, 380–85 (1965) (codified as amended in scattered sections of Title 26 of the U.S.C.); *see also Morrison Restaurants, Inc. v. United States,* 918 F.Supp. 1506, 1512 (S.D.Ala.1996). Starting in 1965, tip income earned by employees was considered remuneration for employment, and was deemed to have been paid when a written statement documenting receipt of the tips was furnished by the employee to the

---

11. Even without a general provision such as 1 U.S.C. § 1 (1994), discussed immediately below, this judge assumes that the Congress "intended" a non-gender-biased statute, which covers both waiters and waitresses in the instant case.

employer, pursuant to I.R.C. § 6053(a), or at the time received, if no such statement was provided by the employee. Social Security Amendments of 1965, Pub.L. No. 89–97, Title III, § 313(c)(4), 79 Stat. 286, 383 (1965) (codified at I.R.C. § 3121(q) (1982)). After the 1965 Social Security Amendments, employers were allowed to deduct and withhold from the employee FICA taxes attributable to tips from reported wages. Social Security Amendments of 1965, Pub.L. No. 89–97, Title III, § 313(c)(1) & (2), 79 Stat. 286, 382–83 (1965) (codified as amended at I.R.C. § 3102(a) & (c)(1)–(2) (1976)). Tips, however, were not considered remuneration for employment for the purposes of the employer share of the FICA tax. *See* Social Security Amendments of 1965, Pub.L. No. 89–97, Title III, § 313(c)(4), 79 Stat. 286, 383 (1965); Social Security Amendments of 1977, Pub.L. No. 95–216, Title III, § 315, 91 Stat. 1509, 1536 (1977); H.R.Rep. No. 95–702, 95th Cong., 1st Sess. 11 (1977) *reprinted in* 1977 U.S.C.C.A.N. 4155, 4168; *Morrison Restaurants, Inc. v. United States,* 918 F.Supp. at 1512.

The duty of an employer to pay FICA taxes on a portion of tips received by employees was established in the Social Security Amendments of 1977, Pub.L. No. 95–216, § 315(a), 91 Stat. 1509, 1536, *repealed by* Pub.L. No. 100–203, Title IX, § 9006(b)(2), 101 Stat. 1330–289 (1987). The Act amended I.R.C. §§ 3111 and 3121 to provide that employers would be liable for the employer's share of the social security taxes on the employee's deemed wages up to the federal minimum wage amount. H.R.Rep. No. 95–702, 95th Cong., 1st Sess. 11 (1977), *reprinted in* 1977 U.S.C.C.A.N. 4155, 4168. As a result, employees were subject to FICA taxes on all tips, but the employers were exempt from FICA taxes for the amount of employee tip income in excess of the federal minimum wage. *See* S. Print No. 63, 100th Cong., 1st Sess. 202 (1987); 133 Cong.Rec. S34,826 (1987).

Section 9006 of the Omnibus Budget Reconciliation Act of 1987 repealed section 315 of the Social Security Amendments of 1977, and established an employer duty to pay FICA taxes matching the amounts paid by and

credited to employees. Pub.L. No. 100–203, Title IX, § 9006, 101 Stat. 1330–288–289 (1987); *see* S.Print No. 63, 100th Cong., 1st Sess. 203 (1987); 133 Cong.Rec. S34,826 (1987). In December 1987, the Senate Committee on Finance issued a Committee Print titled "Explanation of Provisions Approved by the Committee on December 3, 1987 for Inclusion in Leadership Deficit Reduction Amendment," which discussed the Senate's intentions regarding various amendments contained within the Omnibus Budget Reconciliation Act of 1987. S.Print No. 63, 100th Cong., 1st Sess. 203 (1987); 133 Cong.Rec. S34,826 (1987). Regarding § 9006 of the Omnibus Budget Reconciliation Act of 1987, which amended I.R.C. § 3121(q), the relevant portion of the Senate Committee Print states in its entirety:

### 3. FICA Tax Provisions

### a. Expand employer share of FICA tax to include all cash tips (sec. 4587 of the bill and sec. 3121(q) of the Code)

#### *Present Law*

The FICA taxes imposed on the employee and the employer generally are equal. The employer is responsible for withholding the employee's share of the tax from the employee's wages and remitting the tax, together with the employer's share of the tax, to the Internal Revenue Service.

Special rules apply to tips. For purposes of the employee FICA tax, all tips received by an employee are considered remuneration for services and are subject to the tax. The tips generally are deemed to be received at the time the employee files a written statement with the employer reporting the receipt of the tips. Tips are subject to FICA taxes only in the case of employees who receive at least $20 in cash tips in a month. Tips in a medium other than cash are not subject to FICA taxes.

However, the full amount of tips received by an employee usually is not subject to the FICA tax imposed on the employer. For purposes of the employer's share of FICA taxes, the employee is deemed to receive wages only to the extent of the excess of the Federal minimum wage rate over the actual wage rate paid

by the employer. Any tips received in excess of the difference between the wages paid and the minimum wage are not subject to the employer's portion of the tax.

### Reasons for Change

Under present law, an employee is required to pay FICA taxes on the total amount of his or her cash tips up to the Social Security wage base. The employer, however, is required to pay FICA taxes only on a portion of the tips. Because Social Security benefits are determined with respect to the entire amount of tips, current law in effect provides a benefit to employers whose employees receive part of their compensation in the form of tips, as compared to other employees who receive all their compensation as salaries. It is believed that to apportion the costs of Social Security benefits more accurately, employers should be subject to tax on all tips which are credited for benefit purposes.

### Explanation of Provision

Under this provision, all cash tips which are subject to the employee FICA tax are included within the definition of wages for purposes of the employer's share of FICA taxes. Thus, employers must pay FICA taxes on the total amount of cash tips and other remuneration, up to the Social Security wage base.

### Effective Date

This provision is effective for remuneration received on or after January 1, 1988.

S.Print No. 63, 100th Cong., 1st Sess. 202–03 (1987); 133 Cong.Rec. S34,826 (1987).

As a result, the Social Security system requires that all wages paid to employees for work performed, including tips reported to the employer, are subject to FICA imposed on both the employer (I.R.C. § 3111) and the employee (I.R.C. § 3101). The rate of tax is determined by multiplying the wages earned by the applicable rate. The rate is the same for the employer and the employee. I.R.C. §§ 3101 and 3111. The system is designed to incorporate the Social Security system's premise of providing wage history credits to employees for wages earned and reported by the individual employees to the IRS. Although in a different context, the Court of Claims, a predecessor court to this court, wrote: "[t]he purpose of the Social Security laws is to provide security for the employees and not to provide 'windfalls' for Government." *American Home Foods, Inc. v. United States,* 136 Ct.Cl. 569, 575, 145 F.Supp. 201 (1956). Allowing the IRS to assess an employer only FICA tax on an aggregate estimate of allegedly unreported employee tips would allow the IRS to derive a windfall by collecting FICA taxes from the employer without crediting the wage credit accounts of the individual employees for Social Security benefit purposes.

The defendant argues that whether the IRS audits some or all of the plaintiff's individual tipped employees, and against which of those individuals the IRS assesses tax deficiencies, are matters within the administrative discretion of the agency. The plaintiff, however, is not challenging the right of the defendant to audit or to assess any particular taxpayer. There is no indication in the statute or in the legislative history, however, that I.R.C. § 3121(q) was amended to allow the IRS to fund the Social Security system without providing corresponding benefits to individual employees. Moreover, the court does not find congressional intent in the language of the amendments to I.R.C. § 3121(q) to allow the IRS to assess an asymmetrical liability for FICA taxes on employers only, without assessing the employee or crediting the employee for Social Security benefits purposes. The defendant defends the disparity in treatment by arguing that the second sentence of I.R.C. § 3121(q), as amended, should be read to extend the statute of limitations for determining employer liability, but that it does not do so regarding employee liability. It is unlikely, however, that by making this argument, the IRS is also waiving individual employee liability for unreported tip income, even in cases in which the assessment is made and notice and demand issued either prior to the expiration of the statute of limitations, or in cases of fraudulent activity on the part of the employee. Moreover, even the defendant seems to discuss the second sentence of I.R.C.

§ 3121(q) as addressing issues of timing not liability. Therefore, to argue that I.R.C. § 3121(q) authorizes an employer only tax on unreported employee tips, based on an aggregate estimate of tips allegedly received by employees, as a result of an extension of the statute of limitations on an employer's liability, is not persuasive. Moreover, this court believes that the choice of the singular term "an employee" in I.R.C. 3121(q), while not dispositive, is relevant to understanding the context of the statute and, therefore, the overall congressional intent. The choice of focus on the employee in the singular, together with the articulated purpose of the Social Security tax scheme, to give credits to employees for wages earned, suggests that assessment of an aggregate estimated tax against the employer only, pursuant to I.R.C. § 3121(q), was not within the purposes of the statute. Nor is there any indication in the legislative history of I.R.C. § 3121(q) to suggest that § 3121(q) was amended to encourage assessments against an employer only for revenue generating purposes or to assist the IRS to police underreporting by the tipped employees.

The parties agree that the issues raised regarding the interpretation of I.R.C. § 3121(q) present novel questions of law for this court. The court and the parties, however, all have noted that the issues raised were addressed, at least in part, in *Morrison Restaurants, Inc. v. United States,* 918 F.Supp. 1506 (S.D.Ala.1996). In the *Morrison* case, which presents facts similar to the above-captioned case, the District Court Judge found:

> The entire statutory scheme related to tips and FICA taxes on such tips is aimed at the individual. This is because the Social Security system is directed at individuals as opposed to an aggregate group of working taxpayers. Benefits are paid to an individual taxpayer according to the amount contributed to FICA by the individual and his employer(s) over his working lifetime.[12] Congress has struggled for years with how tip income should partici-

pate in the FICA system. Specifically, Congressional attention to this dilemma has evolved over twenty-five years from exempting employer contribution based on tip income to raising the exemption to the level of the minimum wage to totally removing the exemption in 3121(q). The statutory history as well as the plain language of 3121(q) shows that Congress intended employers to pay their full share of employer FICA tax. With 3121(q) Congress placed employers on equal contribution footing with their employees with regard to all income including wages in the form of tips. IRS's actions in this case disturbs such "equal footing." First, IRS made its determination of underreported cash tips without attempting to determine whether any of Plaintiff's employees actually underreported or failed to report their cash tips. Second, IRS will not credit Plaintiff's employees' FICA benefits from any increased tax paid by the employer. Defendant would have the employer contribute more to FICA than its employees while Plaintiff's employees would receive no benefit from the additional contribution. Such a result flies in the face of the intent and purpose of FICA.

*Morrison,* 918 F.Supp. at 1513–14. The *Morrison* court also wrote:

> The language of 3121(q) and the legislative history cited by both parties show that Congress intended to level the contributions to FICA between tipped employees and their employers. Congress expressed its intent by making employers liable for FICA tax on the entire amount of wages received by an employee in the form of tips. Section 3121(q) does not express an intent to force employers to police the reporting of tips by their employees. An employee is legally required to report all tips received.... Congress has given IRS the power to enforce accurate reporting of tip income by individuals. If such power is insufficient or too expensive to be practica-

---

12. Supplemental stipulation of fact 48 states, however, that: "The Social Security Administration bases its records with respect to an individual worker on wages earned by the individual and reported to the IRS, not upon the amount of FICA taxes paid to the IRS on the individual's wages."

ble, IRS should take such argument to Congress.

The Court HOLDS that IRS's assessment of additional employer FICA taxes for the years 1990 and 1991 against Plaintiff was illegal.

*Id.* at 1514.

During the course of the compliance review of the plaintiff, Bubble Room, performed by the IRS on January 7–8, 1991, the IRS agent utilized an indirect formula, known as the McQuatters formula, to calculate an aggregate estimate of the total tips allegedly earned by Bubble Room employees. The IRS has the authority, under I.R.C. § 446(b), to use an indirect method to calculate taxable income when the method of accounting used by a taxpayer does not clearly reflect income. As stated in *Meneguzzo v. Commissioner,* "[i]f a taxpayer fails to keep the required records, or the records kept do not clearly reflect income, the respondent [IRS Commissioner] is authorized by section 446 to compute income in accordance with such method as in his opinion does clearly reflect income." *Meneguzzo v. Commissioner,* 43 T.C. 824, 831, 1965 WL 1240 (1965).

The McQuatters formula takes its name from a tax court case, *McQuatters v. Commissioner,* 32 T.C.M. (CCH) 1122, 1973 WL 2419 (1973). The petitioners in the *McQuatters* case were waitresses working in a restaurant in Seattle during 1967 and 1968. In the *McQuatters* case, the IRS had used an indirect formula to calculate an estimate of how much those individual employee waitresses were assumed to have earned in tips during 1967 and 1968. *Id.* at 1125, 1973 WL 2419. The IRS utilized credit card records to ascertain the percentage of tips paid on credit cards. The credit card tip percentage was then used, together with the total sales figures, to indirectly calculate an estimated cash tip rate for individual employees. *Id.* at 1125, 1973 WL 2419.

In *McQuatters,* the Tax Court stated that it was penalizing the taxpayers for failure to keep adequate records. The court, in *McQuatters,* reasoned that the IRS was allowed to use an indirect method to assess a FICA tax against individual servers because "[i]n the absence of adequate record keeping by petitioners [the waitresses], the respondent [the IRS Commissioner] was justified in reconstructing their tip income by an indirect method, and the method employed was logically and factually sufficient." *McQuatters v. Commissioner,* 32 T.C.M. (CCH) at 1125, 1973 WL 2419; *see also Mendelson v. Commissioner,* 305 F.2d 519, 523 (7th Cir.1962), *cert. denied,* 371 U.S. 877, 83 S.Ct. 149, 9 L.Ed.2d 114 (1962) (stating that "[a]ll taxpayers, ... by failure to keep records of their income assume the hazard that they may be called upon to pay a tax based on an income which cannot be determined to a certainty."); *Schroeder v. Commissioner,* 40 T.C. 30, 33–34, 1963 WL 1293 (1963) (indicating that the taxpayer's failure to keep any written records of the amount of the tips she received was "extremely negligent" and, therefore, the IRS was permitted to use an indirect method).

In the above-captioned case now before this court, the government attempts to argue that the McQuatters formula, previously used only to calculate individual employee income tax liability, also can be used to assess FICA taxes against the employer based upon the aggregate of estimated tip income of its employees. The punitive reasoning employed by the *McQuatters* court, which justified the IRS assessment because of the failure of the employees to keep adequate records, however, does not justify applying the McQuatters formula to employers such as the Bubble Room to reconstruct or estimate employee records on an aggregate basis. Employers do not have an opportunity to verify the amount of cash tips earned by their individual employees. Their knowledge of employees' tip income is limited to copies of credit card charge slips and to reports of tips received from their employees, who have the direct interaction with the customers. Tipping was a voluntary activity between customers and Bubble Room employees, therefore, the plaintiff had no way of determining the exact amount of tips received by individual employees if the tip was not charged and if the employees were not forthcoming.

Moreover, in the instant case, the plaintiff appears to have devoted considerable effort

during the relevant time period towards ascertaining the correct amount of tips earned by individual employees on a daily basis, and had set up comprehensive procedures to collect the cash tip information from its employees for the purposes of reporting to the IRS on Form 8027 ("Employer's Annual Information Return of Tip Income and Allocated Tips"). The Bubble Room implemented a daily check-out procedure, which required employees to report their tip income at the end of each shift. The plaintiff also distributed an Employee Policy Manual and issued a letter on February 3, 1989, requiring all employees to acknowledge their responsibility for accurately reporting tip income. As a result, the punitive rationale used by the court in the *McQuatters* case to justify assessing a FICA tax against an employee for failure to keep adequate records for unreported tip income should not be applied to the employer, Bubble Room.

In the instant case, the IRS agent reviewed the Bubble Room's Form 8027 ("Employer's Annual Information Return of Tip Income and Allocated Tips") to ascertain the total cash and credit card receipts for the plaintiff during 1989. The agent also reviewed the Bubble Room's charged receipts to ascertain the tip rate for meals charged on credit cards, and then employed a McQuatters-type calculation to apply the charged tip rate to total cash receipts, to arrive at an employer only FICA tax based on aggregate estimated tips. The formula used in the instant case was not based on individual assessments or collections of additional FICA taxes from plaintiff's tipped employees, nor were the employees credited with Social Security wage credits. The IRS agent also failed to take into account several important factors. The IRS agent excluded charged meals on which employees did not receive tips because the tip, if any, was determined to be unknown. The IRS agent did not attempt to determine a "no tip" rate, *i.e.*, the number of customers who did not pay a tip, although they did pay for their meal. In addition, the IRS agent did not take into account the three percent (3%) charge assessed by credit card companies for all charges, including tips, which the plaintiff deducted from the tips paid to servers. In

applying the McQuatters formula to employers on an aggregate, estimated basis, rather than to individual employees, the above mentioned deficiencies are amplified and produce an increasingly exaggerated and more inaccurate, aggregate, estimated assessment, than when applied to an individual employee taxpayer. Additionally, the court notes that when the same IRS agent audited one of the plaintiff's employees, Thomas Filiault, she arrived at a different numerical result than the one computed for the Bubble Room as to the appropriate tip rate to be used in the assessment.

Furthermore, tips on credit card receipts may not be representative of tips on cash receipts. As noted by the Tax Court in *Yukimura v. Commissioner*, generally, "charged tip percentages tend to exceed noncharged tip percentages." *Yukimura v. Commissioner*, 43 T.C.M. (CCH) 467, 470, 1982 WL 10891 (1982) (footnote omitted). There is no evidence in the record indicating that tips on credit cards are directly proportional to cash tips. As of the time of the compliance review, no surveys had been done of cash tip rates at the Bubble Room. Additionally, during the October 31, 1995 deposition testimony of Krista Garlinger, the IRS agent who performed the compliance review of the Bubble Room, the following colloquy took place:

Q. ... But if it were the case that, indeed, the cash tip rate may have been 11 percent or 10.6 percent as apposed [sic] to a charge tip rate of 14.6 percent, it's true that that would have substantially reduced the alleged underreporting in this case of tips?

A. [Krista Garlinger] For the Bubble Room? For the compliance check, you mean?

Q. For the, yeah, your number that you calculated would have been substantially less if the, if you had used 10 or 11 percent cash tip rate?

A. Based on McQuatter's Formula, you take into account if the cash—you take into account adjustment if the cash is appraised different, yes.

Q. Okay. Didn't make any adjustment for a different cash tip rate. You used the 14.6 percent cash tip rate; did you not?

A. Correct. Based upon interviews I had with employees.

The court's words in the *Yukimura* case, together with the deposition testimony of Krista Garlinger, suggest that, in all probability, there should have been an adjustment between charged tip rates and cash tip rates in the instant case.

Although this court is sympathetic to the defendant's argument that a substantial amount of employee cash tip income appears to be unreported throughout the restaurant industry, this court agrees with the court in *Morrison Restaurants, Inc. v. United States* that employers should not have to police the reporting of tips by employees on behalf of the IRS. *See Morrison Restaurants, Inc. v. United States*, 918 F.Supp. at 1514; *Norfolk Yacht and Country Club v. United States*, 75–2 USTC (CCH) ¶ 9849, 1975 WL 731 (E.D.Va.1975) (stating that an employer does not have a duty to police tip reporting by an employee under I.R.C. § 6053 or to be a watchdog for the government). In the instant case, the amount of cash tips reported on Bubble Room's Form 8027 ("Employer's Annual Information Return of Tip Income and Allocated Tips"), 1.4% of total cash receipts, suggests substantial underreporting for 1989, and certainly was significantly below the norm for the industry. A study titled *Tip Income Study: A Study of Tipping Practices in the Food Service Industry*

*for 1984*, I.R.S. Pub. No. 1530 (1990), documents the problems involved in underreporting. Even a substantially low reporting of cash tips, however, does not justify allowing the IRS to shift its responsibility to the employer for policing the acknowledged problem of underreporting of tips by employees. It is the responsibility of the IRS to track down and collect unreported income. If the IRS wishes to shift its duty to employers to ensure proper compliance, it should do so through a congressional enactment and continued cooperation between restaurants and the IRS.[13] Moreover, in the case at bar, the plaintiff, Bubble Room, went to significant lengths to notify and encourage its employees to comply with an employee's legal obligations to report tips under I.R.C. § 6053.

Finally, the court notes that, in the instant case, the IRS cannot prove that the assessment of the Bubble Room was properly performed. The IRS does not have adequate documentation to support the allegedly random 28–day sample selected for the Bubble Room compliance check. These 28 days in 1989 were selected by an IRS computer audit specialist. Yet, the IRS has stated that it did not retain the backup data, and presently has no records available, which indicate the specific days in 1989 used in the compliance check. For a sample to be valid, it must be randomly selected and representative of the entire population. By not maintaining records, the IRS is unable to prove to this court that the sample of days selected were repre-

---

13. The difficulty of utilizing a McQuatters type formula to assess a FICA tax against an employer only, based on an aggregate estimate of employee tips, may have been informally addressed prospectively by the IRS in a June 1995 Tip Rate Alternative Commitment ("TRAC") agreement negotiated between representatives of the food industry and the IRS.

TRAC embodies four principal commitments; employee education, employer reporting, employer tip reporting procedures, and section 3121(q) notices. First, the employer agrees to maintain a quarterly educational program that trains newly hired employees and periodically updates existing employees as to their reporting obligations with respect to tips. Second, the employer agrees to comply with all Federal tax requirements regarding the filing of returns, paying and depositing of taxes, and maintaining records. Third, the employer

agrees to establish procedures to ensure accurate tip reporting by its employees. Finally, the Service agrees, with certain exceptions, to issue a section 3121(q) notice and demand based solely on amounts reflected on Form 4137 or Form 885–T.

*Market Segment Understanding Guidelines with the Food Service Industry—Tip Reporting Alternative Commitment*, IRS Pos. (CCH) ¶ 230,001, at 132,501 (July 26, 1995). This same report later defines the forms as follows:

1. Form 4137, Social Security and Medicare Tax on Unreported Tip Income, filed by an Employee with his or her Form 1040, or

2. Form 885–T, Adjustment of Social Security Tax on Tip Income Not Reported to Employer, prepared at the conclusion of an employee tip examination.

*Id.* at 132,505.

sentative of the entire period under review. Also, because the defendant did not maintain records to support the sample, it is not possible to determine whether the tip rate was subject to variable trends, for example, those associated with tourism, given that the two Bubble Room restaurants are located in Florida. This court believes that because of the government's failure to maintain records, the presumption of the correctness of the findings of the Commissioner of Internal Revenue, discussed above, should not be available to the defendant as a way of defeating plaintiff's claims. The government has acted without exercising the proper level of care due to this or any other taxpayer.

## CONCLUSION

After careful review of the record before this court and the applicable law, the court concludes that the plaintiff has met its burden of proof on summary judgment. There is nothing in the statutory language or in the legislative history to suggest that Congress intended I.R.C. § 3121(q) to authorize the IRS to assess an employer only FICA tax on the aggregate estimate of allegedly unreported tips of employees. Moreover, in the instant case, the inability of the IRS to validate its methodology in arriving at the tax assessment against plaintiff further justifies awarding judgment to the plaintiff. As a result, the plaintiff in the above-captioned case is entitled to recover in the amount of thirty-one thousand, seven hundred and ninety dollars ($31,790.00), plus interest, as well as appropriate costs and fees. For the reasons discussed above, plaintiff's motion for summary judgment is **GRANTED,** and defendant's cross-motion for summary judgment is **DENIED.** The Clerk's Office is directed to enter judgment for the plaintiff in accordance with this opinion.

**IT IS SO ORDERED.**