**FIOR D'ITALIA, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. C–97–4613–CAL.**

United States District Court,
N.D. California.

Sept. 18, 1998.

Tracy J. Power, Power & Coleman, Richard L. Davis, Arlington, VA, Menlo Park, for Plaintiff.

Thomas Moore, Assistant U.S. Attorney, Office of U.S. Attorney, San Francisco, CA, for Defendant.

### OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

LEGGE, District Judge.

The plaintiff taxpayer challenges the Internal Revenue Service's use of a so-called "aggregate" method to determine, assess and collect an employer's share of FICA taxes on the tips received by its restaurant employees. Plaintiff has moved for summary judgment on this issue, and the government has filed a cross-motion for summary judgment on its counterclaim for the payment of the IRS's assessment. The motions were argued and submitted for decision. The court has reviewed the moving and opposing papers, the record and the applicable authorities.

### I.

Plaintiff Fior D'Italia operates a restaurant in which its employees receive tips. It computes and pays its share of Federal Insurance Contribution Act ("FICA") taxes for each employee, based on each employee's salary and tip reports. Each year it files a Form 8027, Employer's Annual Information Return of Tip Income and Allocated Tips.

In 1994 the Internal Revenue Service ("IRS") sent plaintiff a Notice and Demand to pay its share of FICA taxes allegedly due on tips *not* reported by its employees for the years 1991 and 1992. The IRS computed the alleged amount of plaintiff's share by using the information on plaintiff's Forms 8027. Specifically, the IRS determined the percentage of tips on the food and services that were charged on credit cards, by dividing the total amount of tips charged by the total charges. It then estimated the total tips received by all employees, by multiplying that percentage by plaintiff's total receipts. The tips that had been actually reported to the IRS were then subtracted from that amount, to determine the estimate of *un*reported tips. That figure was then subjected to the employers' FICA tax rate of 7.65% to determine plaintiff's alleged FICA tax liability.

The IRS did not attempt to identify the amount of unreported tips of each employee.

It instead used the above formula as to all of plaintiff's employees in the aggregate.

The IRS thus calculated that plaintiff owed additional FICA taxes on the aggregate unreported tips of all employees, in the amounts of $11,976 in 1991 and $11,286 in 1992. Plaintiff paid a small portion of those taxes under protest, and then brought this suit for a refund. For purposes of this litigation, plaintiff does not dispute the facts or determinations used by the IRS to assess the aggregate unreported tip income. However, plaintiff challenges the use of the above *aggregate* method to determine its share of FICA taxes. It argues that the statutes governing FICA taxes, particularly 26 U.S.C. § 3121(q), require the IRS to determine FICA taxes for each employee *individually* in order to assess the employer's share. The government argues that the statute allows the IRS to use its aggregate method to determine the employer's share.

### II.

These cross-motions for summary judgment do not dispute any facts. The parties agree that the motions turn solely on questions of statutory interpretation. The motions are therefore appropriate for resolution under Fed.R.Civ.P. 56.

A plaintiff in a tax refund action bears the ultimate burden of proving an overpayment of its taxes and the amount that it is entitled to recover. *United States v. Janis,* 428 U.S. 433, 440, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). The IRS's determination of a tax deficiency is presumed to be correct, and the taxpayer bears the burden of overcoming that presumption. *United States v. Barretto,* 708 F.Supp. 577, 579 (S.D.N.Y. 1989).

Here, the plaintiff taxpayer objects to the government's interpretation of Section 3121(q). As will be discussed below, the language of the statute does not directly answer the issue. And the IRS has not promulgated a regulation on the issue. It has enforced its interpretation only by making assessments against certain restaurant employers.

■ This court's analysis of the issue is governed by the following requirements:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress had directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The deference given to an administrative agency's interpretation of a statute applies even if no formal regulation exists. *Alexander v. Glickman*, 139 F.3d 733, 736 (9th Cir.1998).

■ Principles of statutory construction require courts to interpret a statute as a whole. *Beecham v. United States*, 511 U.S. 368, 372, 114 S.Ct. 1669, 128 L.Ed.2d 383 (1994). "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 285, 76 S.Ct. 349, 100 L.Ed. 309 (1956) (quoting *United States v. Boisdore's Heirs*, 8 How. 113, 122, 12 L.Ed. 1009). And a court may also examine the legislative history if the meaning of the statute is not plain on its face.

### III.

FICA tax payments come from two sources: (1) the employee's share, which is usually paid by deductions from an employee's wages, and (2) the employer's contribution, usually equal to the employee's share. Subchapter A of the Federal Insurance Contributions Act governs the tax on employees.

26 U.S.C. § 3101 ("there is hereby imposed on the income of every individual a tax equal to the following percentages of the wages (as defined in section 3121(a)) received by him with respect to employment (as defined in section 3121(b)) ...."). The tax on employers is governed by Subchapter B. 26 U.S.C. § 3111 ("there is hereby imposed on every employer an excise tax, with respect to having individuals in his employ, equal to the following percentages of the wages (as defined in section 3121(a)) paid by him with respect to employment (as defined in section 3121(b)) ....").

The dispute here concerns the interpretation of Section 3121(q), which states:

> (q) Tips included for both employee and employer taxes.—For purposes of this chapter, tips received by an employee in the course of his employment shall be considered remuneration for such employment (and deemed to have been paid by the employer for purposes of subsections (a) and (b) of section 3111). Such remuneration shall be deemed to be paid at the time a written statement including such tips is furnished to the employer pursuant to section 6053(a) or (if no statement including such tips is so furnished) at the time received; except that, in determining the employer's liability in connection with the taxes imposed by section 3111 with respect to such tips in any case where no statement including such tips was so furnished (or to the extent that the statement so furnished was inaccurate or incomplete), such remuneration shall be deemed for purposes of subtitle F to be paid on the date on which notice and demand for such taxes is made to the employer by the Secretary.

Plaintiff contends that this section, when read in conjunction with the rest of the code dealing with FICA taxes, does not permit an *aggregate* assessment of unreported tips to determine the employer's share, but requires an *individual* determination of the unreported tips for each employee. The government contends that nothing in the statute prohibits the use of an aggregate method, and that the IRS's method is a reasonable interpretation of the section.

Only two cases have ever addressed this question. In *Morrison Restaurants, Inc. v. United States*, 918 F.Supp. 1506 (S.D.Ala. 1996), the district court adopted the interpretation advanced by plaintiff. That decision was vacated and remanded by the Eleventh Circuit in *Morrison Restaurants, Inc. v. United States*, 118 F.3d 1526 (11th Cir.1997), which court decided that an aggregate assessment is permitted by the statute. However, in *The Bubble Room, Inc. v. United States*, 36 Fed.Cl. 659 (1996), the Court of Federal Claims held that the IRS may not assess an employer's share of the FICA tax by using the aggregate method.

There is no case authority in this circuit.

## IV.

■ This court starts, as it must, with the language of the section. If the meaning of the statute is clear and unambiguous on its face, the court need go no further. Here, plaintiff argues that the meaning of Section 3121(q), as well as related Section 3111, is plain.

Plaintiff points out that § 3111, which imposes the FICA tax on employers, provides that it is imposed on an employer with respect to having *individuals* in his employ, equal to the percentages of wages defined in Section 3121(a) paid "with respect to employment (as defined in section 3121(b)) ..." (emphasis added by plaintiff). Plaintiff contends that the use of the term "individuals" is significant.

Plaintiff also highlights the definition of "employment" in Section 3121(b): "any service, of whatever nature, performed ... by *an* employee for the person employing him." (emphasis added by plaintiff).

And plaintiff points to the language in Section 3121(q) which states that "tips received by *an* employee in the course of *his* employment shall be considered remuneration for such employment." (emphasis added by plaintiff).

Plaintiff argues from the frequent use of the singular term and from the word "individuals" that Congress intended that the IRS assess an employer's share of FICA taxes as to *each* of its employees. While certainly relevant, this argument is not conclusive, particularly in light of the rules of construc-

tion stated at the beginning of the United States Code. "In determining the meaning of any Act of Congress, unless the context indicates otherwise—words importing the singular include and apply to several persons, parties, or things; words importing the plural include the singular...." 1 U.S.C. § 1 (1994). Thus, the meaning of Section 3121(q) is not made unambiguous simply because the section uses singular nouns and articles.

The government argues that the language of the section not only allows for an aggregate assessment method, but clearly contemplates it. It notes that Section 3121(q) provides that tips are "deemed to have been paid" by the employer, and that the IRS may issue a notice and demand for the employer's share of FICA taxes even if employees fail to report their tips accurately. Specifically, the section states:

> [I]n determining the employer's liability in connection with the taxes imposed by section 3111 with respect to such tips in any case where no statement including such tips was so furnished (or to the extent that the statement so furnished was inaccurate or incomplete), such remuneration shall be deemed for purposes of subtitle F to be paid on the date on which notice and demand for such taxes is made to the employer by the secretary.

The Circuit Court in *Morrison* found that argument significant:

> This provision clearly states that an employer can be assessed for its share of FICA taxes on employee tips even if the employee fails to report all tips. It also suggests that the employer can be assessed its share of FICA taxes even when the individual employee's share is not determined.

118 F.3d at 1529. In further support, the *Morrison* court emphasized that Congress placed the provisions imposing the employer's and employee's share of FICA taxes in separate subsections. *Id.* The court reasoned that this placement indicated "that Congress contemplated that employees' and employer's shares could be imposed separately." *Id.*

However, that does not directly answer the question here. Even though Section 3121(q)

allows the IRS to serve a demand on employers for the FICA taxes on unreported tip amounts, without also serving a demand on the employees, it does not say that the IRS may determine the employer's share through *aggregation.* That is, it does not impose the employer's obligation based on the estimated tips of *all* of the employees as a group.

The government also argues that the section provides a different statute of limitations for employers and employees. It provides that the "remuneration shall be deemed for purposes of subtitle F to be paid on the date on which notice and demand for such taxes is made to the employer by the Secretary." Subtitle F contains procedural and administrative provisions, including: the statute of limitations on assessments, I.R.C. § 6501; the timing of assessments, I.R.C. § 6201; and at what point interest begins to accrue, I.R.C. § 6601. The government contends that for employees, the tips are deemed paid when they submit a tip report to their employer or, if no report is furnished, when the tips are received, and the statute of limitations begins to run at one of those times. For employers, the tips are deemed paid when the employee submits a tip report or, if no report is furnished or if the report is inadequate, when a notice and demand is served on the employer. The government says that this extends the statute of limitations for the employer, potentially beyond the point at which the IRS could still assess unpaid taxes against the employee. The government argues that the clause therefore anticipates that the IRS might assess unpaid FICA taxes against an employer without making a corresponding assessment against the employee.

That may well be true. But it again does not answer the question here; that is, whether the IRS can assess the FICA tax on an employer in the aggregate—for the estimated tips of *all* employees as a group.

It seems unlikely that Congress intended that the above clause of the section was for the purpose of authorizing such aggregate computation of a tax. It does not directly say so. A more likely interpretation is that the clause does only what it says it does— define the timing of assessments and when interest begins to accrue. Congress probably wanted to start the accrual of interest earlier for employees, because the employees know about their tips from the time of receipt, whereas employers should not be subject to interest accrual until they have knowledge of the unreported tips, such as when a notice and demand is made.

The court concludes that the statute, Section 3121(q) and its related I.R.C. sections, simply does not address the subject of an aggregate method of assessment that is at issue here.

## V.

The court therefore turns to the legislative history of FICA taxes, the purposes of FICA, and the interaction of Section 3121(q) with other sections involving FICA taxes — particularly what they say about the FICA taxation of tips.

The United States has always subjected tips to *income* tax liability, but it did not always consider tips in determining an employee's wage earning history for the purposes of Social Security. *Bubble Room,* 36 Fed.Cl. at 672. Congress amended the statutes in 1965 to provide that an employee's Social Security wage earning history would include tip income. *Id.* (citing Social Security Amendments of 1965, Pub.L. No. 89–97, Title III, § 313, 79 Stat. 286, 380–85 (1965) (now codified as amended in various sections of Title 26 of the U.S.C.)). The tip income would be credited to the employee's Social Security account. As a result of those amendments, tips were considered remuneration for employment and were deemed paid when a written statement of the tips was furnished to the employer; or when the tips were received by the employee, if the employee failed to provide the statement. *Bubble Room,* 36 Fed.Cl. at 672–73 (citing Social Security Amendments of 1965, Pub.L. No. 89–97, Title III, § 313(c)(4), 79 Stat. 286, 383 (1965))(codified at I.R.C. § 3121(q)(1982)). Employers could then deduct and withhold from an employee's wages the employee's share of FICA taxes attributable to the tips. But the same tips were not then considered for purposes of the *employer's* share of FICA taxes. *Bubble Room,* 36 Fed.Cl. at 673.

In the Social Security Amendments of 1977 employers were then required to pay FICA taxes on a portion of tips received. Pub.L. No. 95–216, § 315(a), 91 Stat. 1509, 1536 (1977), *repealed by* Pub.L. No. 100–203, Title IX, § 9006(b)(2), 101 Stat. 1330–289 (1987). At that time, Sections 3111 and 3121 were amended to provide that employers must pay FICA taxes on tips up to the federal minimum wage amount. H.R.Rep. No. 95–702, 95th Cong., 1st Sess. 11 (1977), reprinted in 1977 U.S.C.C.A.N. 4155, 4168. As a result, employees were required to pay FICA taxes on all tips, but employers were required to pay FICA taxes on the employees' tip income only up to the federal minimum wage. *Bubble Room*, 36 Fed.Cl. at 673.

Section 3121 was later amended by the Omnibus Budget Reconciliation Act of 1987, this time requiring employers to pay the same amount of FICA taxes as paid by the employees. *Id.* at 673 (citing Pub.L. No. 100–203, Title IX, § 9006, 101 Stat. 1330–288–289 (1987)). The relevant portion of the Senate Committee on Finance Print regarding that amendment to Section 3121(q) indicates that the main purpose of the amendment was to equalize the payments made by employers and employees. S. Print No. 63, 100th Cong., 1st Sess. 202–03 (1987); 133 Cong. Rec. S34,826 (1987). Congress also intended to equalize the FICA contributions of employers whose employees' receive tips with the FICA contributions of employers whose employees do not. Nothing in the legislative history indicates a Congressional intention to make employers *more* responsible than the employees for FICA taxes on tips. And nothing indicates an intention to place a tax on employers that is not credited to the employees' Social Security accounts, as the government's aggregate assessment method here would do.

■ Plaintiff argues that the general purpose of FICA taxes, and the manner in which the Social Security system operates, indicate that FICA taxes must be assessed on an individual basis. The system is a form of "social insurance" in which contributions are collected from current employees and employers in order to provide insurance for those who no longer support themselves through employment. *Flemming v. Nestor*,

363 U.S. 603, 609, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).

As the government points out, however, the eligibility for Social Security benefits does not depend entirely on the amount of an employee's own contributions to the system.

> Plainly the expectation is that many members of the present productive work force will in turn become beneficiaries rather than supporters of the program. But each worker's benefits, though flowing from the contributions he made to the national economy while actively employed, are not dependent on the degree to which he was called upon to support the system by taxation.

*Id.* at 609–10.

■ Nevertheless, employees' entitlements to Social Security benefits and the amount to which they are entitled are determined by their wage earning history. *Id.* at 608. The method of assessing the employers' share of the FICA tax here, based on an aggregate of unreported tips, without attributing those amounts to the earnings records of individual employees, would not enhance the employees' later entitlement to Social Security benefits. It amounts to a tax on the employers without a commensurate benefit to the employees. The government responds that such a result is caused by the employees' own failure to make full disclosures of their tip income. While this is true, a tax on employers based on aggregate assessment without individual employee credit, operates as a general revenue tax for the government beyond the purpose of the FICA taxes.

Some evidence of the intent of Congress in Section 3121(q) can also be found in another subsection, Section 3121(a), and in another section of the Internal Revenue Code, Section 45B.

Section 3121(a) states that the term "wages" includes all remuneration for employment, but lists exceptions. Among those exceptions are "cash tips received by an employee in any calendar month ... unless the amount of such cash tips is $20 or more." I.R.C. § 3121(a)(12)(B). Thus, tips are not "wages" for FICA tax purposes unless they are more than $20 *per employee* per month.

When the IRS uses its aggregation method for determining unreported tips, it does not ascertain whether *each* employee's tips exceeded $20 and are therefore subject to the FICA tax. It cannot determine whether that exception applies unless it determines *each* employee's tip amounts.

Further, Section 45B provides a tax credit to employers equal to:

> any tax paid by an employer under section 3111 with respect to tips received by an employee during any month to the extent such tips—. . . are deemed to have been paid by the employer to the employee pursuant to section 3121(q) (without regard to whether such tips are reported under section 6053) . . .

to the extent that it exceeds the employer's tax due on the federal minimum wage rate applicable to the employee. 26 U.S.C. § 45B(b).

Essentially, employers may take a tax credit for FICA taxes paid on tips in excess of the tax due on federal minimum wage. An employer cannot take advantage of this tax credit if the IRS assesses his FICA taxes on unreported employee tips in the aggregate. The unreported tips for *each* employee must be determined in order to ascertain whether the employer has paid FICA taxes on that employee's wages in excess of the minimum wage. That provision expressly applies to situations in which the employee has failed to report or has underreported tips ("without regard to whether such tips are reported under section 6053"), and therefore anticipates that each employee's taxable wages will have been determined before the employer is required to pay FICA taxes as to that employee.

▮ Sections 3121(a) and 45B therefore indicate that Congress intended that individual wage assessments would be made before the employer's share of FICA taxes could be assessed. Those provisions could not be applied otherwise. If the IRS were permitted to make assessments of taxes due on an aggregation of unreported tips, those credits and exemptions would become a nullity for many employers. It is a basic rule of statutory construction "that one provision should not be interpreted in a way . . . that renders other provisions of the same statute inconsistent or meaningless." *Shields v. United States*, 698 F.2d 987, 989 (9th Cir.1983).

## VI.

The government argues that disallowing the IRS's aggregate assessment method would provide an incentive to employers to encourage their employees to underreport tips. The *Morrison* court agreed. "We are concerned . . . that basing the employer's share of FICA taxes exclusively on employees' reported tips would provide incentive to the employer to discourage accurate reporting or ignore blatantly inaccurate reporting by the employees so that the employer could pay less FICA tax." 118 F.3d at 1530.

While that result could follow, nothing in the legislative history indicates that Congress had this objective in mind when it amended Section 3121(q). *See* S. Print No. 63, 100th Cong., 1st Sess. 202–03 (1987); 133 Cong. Rec. S34,826 (1987). Rather, Congress was concerned with equalizing the taxes paid on tips by employers with those paid by employees. And as stated, nothing in Section 3121(q) expressly authorizes or compels the use of an aggregation method. Congress never suggested that its legislation was for the purpose of preventing employers from encouraging employees to underreport tips.

In fact, Congress appears to have rejected that concern in its amendments to Section 45B, the section which provides a tax credit to employers for FICA taxes paid on tips in excess of the federal minimum wage. Prior to 1996, that section did not include any mention of unreported or underreported tips, and the IRS interpreted the statute to allow an employer to take the credit only for FICA taxes paid by the employer on *reported* tips. 58 F.R. 68033, *68033. The IRS's perception of Congress's intent was explained in a letter from the Department of Treasury to the Senate:

> The temporary regulation clarifies that the credit applies only to FICA taxes paid on tips *reported to the employer by its employees*. This provision is clearly supported by the Conference Committee Report to the Omnibus Budget Reconciliation Act of 1993, which states that the credit is

applicable to the employer's FICA tax obligation "attributable to *reported* tips" (emphasis added).

Consistent with this Congressional intent, the temporary regulation will prevent an employer from claiming the credit for FICA taxes paid pursuant to a section 3121(q) notice and demand following a tips examination by the IRS. We believe that this provides the only fair and logical result and provides employers with a strong incentive for encouraging employees to report their tips.

Letter from Leslie B. Samuels, Assistant Secretary, Department of the Treasury, to Senator Trent Lott, United States Senate (March 30, 1994).

Congress expressly disclaimed this intent when it amended Section 45B in 1996, providing that the tax credit was available "without regard to whether such tips are reported under section 6053." I.R.C. § 45B(b); *see also* 61 F.R. 67212, *67213. Thus, the *Morrison* court's fear that disallowing aggregate assessment would provide an incentive to employers to encourage their employees to underreport tips was apparently not shared by Congress in 1996.

Another reason argued by the IRS for allowing its aggregation method is administrative convenience. That reason has some merit. However, administrative convenience does not guide a court's interpretation of a statute unless Congress has indicated that it shares that interest.

Both concerns of the IRS may be good reasons to persuade Congress to amend the statute. But they do not provide support for the government's interpretation of the current statute.

### VII.

In summary, Section 3121(q) on its face does not clearly allow or prohibit the IRS method of assessing employer FICA taxes by aggregating unidentified employees' unreported tips. However, when Section 3121(q) is read in conjunction with other sections of the FICA statutes, as well as other sections of the Internal Revenue Code, this court believes that Congress intended that an employer's share of FICA taxes be based on individual assessments of each employee's wages. The basic structure of the FICA tax system is to provide ultimate benefits for individual employees. The legislative history further supports this interpretation. The legislation appears generally directed at equalizing the tax burdens of employees and employers. Section 3121(q) is not just for revenue enhancement. Although this court owes deference to the IRS's interpretation of the statute, its interpretation conflicts with other statutory provisions regarding employer FICA taxes on tips. It is therefore not a permissible construction of Section 3121(q).

This court therefore grants plaintiff's motion for summary judgment and denies the United States' motion for summary judgment on its counterclaim. However, further procedures are necessary to establish the amount of the tax refund that is due to plaintiff. There will be a status conference on October 30, 1998 at 11:00 a.m. to schedule those procedures.

IT IS SO ORDERED.