**330 WEST HUBBARD RESTAURANT CORPORATION d/b/a Coco Pazzo, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 98 C 178.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 24, 1998.

Michael J. Von Mandel, Von Mandel, Chicago, IL, Thomas W. Power, Power & Coleman, Arlington, VA, Tracy J. Power, Power & Power, Arlington, VA, for Plaintiff.

Barbara E. Seaman, U.S. Dept. of Justice, Tax Div., Washington, DC, for U.S.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

This case marks the fourth contest between the IRS and the restaurant industry over the collection of the FICA tax—the tax which funds our social security and medicare systems, *see* I.R.C. §§ 3101, 3111—on tips earned by restaurant employees. In the first action, in Alabama, a restaurant prevailed, *see Morrison Restaurants, Inc. v. United States,* 918 F.Supp. 1506 (S.D.Ala.1996), but then lost on appeal, *see Morrison Restaurants, Inc. v. United States,* 118 F.3d 1526 (11th Cir. 1997). In Florida, a restaurant again first prevailed, *see Bubble Room, Inc. v. United States,* 36 Fed. Cl. 659 (1996), and lost on appeal, *see Bubble Room, Inc. v. United States,* 159 F.3d 553 (Fed.Cir.1998). The industry was successful in California, *see Fior D'Italia, Inc. v. United States,* 21 F.Supp.2d 1097 (N.D.Cal.1998), and similar cases are pending in New York and elsewhere. Now before us in Chicago are cross motions for summary judgment from the IRS and yet another restaurant.

Collection of the FICA tax on tips has proved troublesome because employees who earn tips, such as restaurant waiters and waitresses, sometimes lie to their employers about the amounts they receive (in violation of I.R.C. § 6053(a); *see also* Treas. Reg. § 31.6053–1) as well as to the IRS. When employees honestly report the full amount of their tips, the employer withholds the employees' share of the FICA tax from their paychecks, *see* I.R.C. § 3102(a) and (c)(1), the employees make up for any shortfall, *see id.* § 3102(c)(2) and (c)(4), the employer pays the same total amount for its share, *see id.* § 3111, and the full tax has been paid. When employees underreport, however, restaurants which rely on employee tip reports do not withhold enough money for the employee share and likewise underpay their own share. *See id.* §§ 3102(c)(1), 3121(q), 6053(a). At a time when "saving social security" is the subject of great public attention, *see, e.g., House O.K.s Social Security Plan,* CHI. TRIB., Sept. 26, 1998, at 2, this does not amuse the IRS: unreported tips recently were estimated as high as $9 billion per year. *See* Luisa Beltran, *Federal Court Strikes Down IRS Tip Reporting Program,* ACCT. TODAY, Nov. 25, 1996, at 10.

There are two ways to collect FICA taxes after employees have underreported their tips. The IRS could audit the restaurant itself and collect the employer's share of the FICA tax on the aggregate amount of unreported tips from all of the restaurant's tipped employees without regard to making an assessment against individual employees. This is the procedure the IRS tried in this case. Coco Pazzo, the restaurant in question, collected from its employees all of the tips they earned each day and redistributed the entire tip pool every week, giving each employee some percent of the pool based on his or her category of employment (waiter, bartender, etc.). (This may be atypical: the restaurants in *Morrison, Bubble Room,* and *Fior D'Italia* did not collect tips from their employees.) By comparing the tips Coco Pazzo distributed to its employees with the tips those employees reported back to it and in their tax returns, an IRS agent calculated that Coco Pazzo's employees failed to report a total of $1,112,453.92 in tips between 1993 and 1995, which meant that Coco Pazzo had underpaid its share of the FICA tax by $85,104. The agent issued a notice and demand letter pursuant to I.R.C. § 3121(q) for that amount,[1] and Coco Pazzo paid $1.53 and

1. This is somewhat curious. Section 3121(q) makes clear that employers are liable for paying their share of the FICA tax even on unreported tips but provides a grace period for employers who unwittingly underpaid their share of the FICA tax due to employee underreporting. Employers issued a § 3121(q) notice and demand letter owe their share of the FICA tax on the underreported tips "on the date on which notice and demand for such taxes is made to the employer," rather than when the employee(s) actually received those tips and ought to have reported them; even though the notice and demand may be issued several years after the underreporting, no penalties or interest are assessed. But Rev. Rul. 95–7, 1995–4 I.R.B. 44, states unequivocally that § 3121(q) does not "apply in situations in which all tips are required by the employer to be turned over to the employer by the employees, and the employer, in turn, distributes the tips among all the employees," presumably because an employer who collects and redistributes all of the tips, like Coco Pazzo, *cannot* be misled if the em-

ployee underreports those tips right back to it. The Revenue Ruling accordingly advises that "tips distributed in those situations are wages *when paid* by the employer" (emphasis added) and hence are not covered by § 3121(q)'s grace period. *Cf. Eastern Inv. Corp. v. United States,* 49 F.3d 651, 657 (10th Cir.1995) (discussing Treas. Reg. § 31.6205–1, which allows an employer to file an interest-free adjustment of its tax returns as soon as it discovers its own underpayment of FICA taxes); Rev. Rul. 75–464, 1975–2 C.B. 474 (discussing Treas. Reg. § 31.6205–1). In the same vein, neither are the offending employees eligible for a grace period, as they are always aware of their own underreporting. *See* I.R.C. § 6652(b); *see also Fior D'Italia,* 21 F.Supp.2d at 1101–02. Revenue Rulings are entitled to "some weight" in this circuit, *see First Chicago NBD Corp. v. Commissioner,* 135 F.3d 457, 459 (7th Cir.1998), but since the IRS did not attempt to assess interest or penalties against Coco Pazzo, we have no occasion to "weigh" this one.

sued for a refund. The IRS has moved for summary judgment for the remainder.

The IRS's supports this approach with reference to I.R.C. § 3111, which imposes the employer's share of the FICA tax on employee "wages," and to § 3121(a) and (q), which together state that all tips received by employees are "wages" "deemed to have been paid" by the employer for purposes of the employer's share of the FICA tax. Subsection (q) further clarifies that to the extent an employee reports tips to the employer pursuant to § 6053(a), those tips are deemed to have been paid by the employer at that time, but if the employee does not report some tips, those tips are deemed to have been paid by the employer at the time that the IRS notifies the employer of the need to pay its share of the FICA tax on them. *Id.* § 3121(q). This provision, the IRS points out, makes no sense unless Congress has assumed that the employer is obligated to pay its share of the FICA taxes on tips its employees have hidden. *See also id.* § 45B(b)(A) (giving employers a tax credit by looking, in part, to tips "deemed to have been paid by the employer to the employee pursuant to section 3121(q) (without regard to whether such tips are reported under section 6053)").

■ The IRS could instead first make assessments against individual employees, report the amount of underreporting to the restaurant, and (only) then demand payment of the employer's share of the FICA tax. That is what Coco Pazzo insists that the IRS must do, and Coco Pazzo's motion for summary judgment accordingly states that it agrees to pay its share of the FICA tax if the IRS first assesses an individual employee for the same amount. The IRS did make assessments against 98 Coco Pazzo employees for a total of $42,709.06, so Coco Pazzo has agreed to pay that same amount. The IRS was unable, however, to locate ten employees who filed returns in 1993 and four employees who filed returns in 1994, and over the three years Coco Pazzo em-

ployees failed to file a total of thirty-four yearly returns.

Coco Pazzo's reading of the FICA provisions is that the IRS must first make individual determinations because I.R.C. § 3111 imposes the employer's share of the FICA tax "with respect to having *individuals* in his employ" (emphasis Coco Pazzo's); § 3121(b) defines employment for FICA purposes as services "performed ... by *an* employee" (emphasis Coco Pazzo's); and § 3121(q) provides that "tips received by *an* employee in the course of *his* employment shall be considered remuneration for such employment" (emphasis Coco Pazzo's).

There are two answers to this. First, of course the FICA tax is imposed on individual employee wages, but that fact offers no guidance on how the IRS should collect the tax from an employer when employees lie about their wages. The use of the singular ("an employee," "his employment") indicates nothing, since in the U.S.Code "words importing the singular include and apply to several persons, parties, or things." 1 U.S.C. § 1; *see also* I.R.C. § 7701(m)(1)(1).

Second, as we have already observed, the IRS *did* base Coco Pazzo's FICA tax liability on a calculation of individual employee underreporting, so Coco Pazzo's own argument is inapposite to this case. A word about tip estimation is probably in order here, however, for Coco Pazzo's argument may be stronger in cases (like *Bubble Room, Morrison,* and *Fior D'Italia*) where the IRS assesses the employer by estimating the aggregate amount of employee tip underreporting, for such estimates appear to be difficult to make accurately. (This was a problem especially in *Bubble Room,* where the Court of Federal Claims's opinion devotes a substantial amount of space to detailing the problems with the IRS's estimate in that case, *Bubble Room,* 36 Fed. Cl. at 663 & n. 6, 676–79 & n. 13, and the appellate court remanded for a recalculation, *see Bubble Room,* 159 F.3d at 567. The court in *Fior D'Italia*

raised statutory problems resulting from aggregate estimates, *Fior D'Italia*, 21 F.Supp.2d at 1102–03; *but see Bubble Room*, 159 F.3d at 567.) To the extent that the IRS is able to convince individual employees to fess up, an "employee first" procedure ensures the accuracy of the restaurant assessment, and accuracy of assessment is one of the IRS's duties, *see generally* I.R.C. § 7491(a) and (b). But to the extent that the IRS is forced to estimate the underreporting of individual employees themselves, as it is entitled to do, *see Mendelson v. Commissioner*, 305 F.2d 519 (7th Cir.1962); *McQuatters v. Commissioner*, 32 T.C.M. (CCH) 1122, 1973 WL 2419 (1973), there may be no advantage to forcing the IRS to make individual employee assessments first, a point missed by the Court of Federal Claims in *Bubble Room* and the District Court in *Fior D'Italia*. This case, again, raises no estimation concerns.

In any event, we believe that the IRS is on the right side of the statutory debate, though we do not think that §§ 3111 and 3121(a) and (q) alone provide the victory. Those sections merely point out (or assume) that the employer has a duty to pay its share of the FICA tax on unreported tips. Coco Pazzo itself recognizes that duty in principle—but claims that the IRS cannot collect that tax until it assesses each employee individually. In a remarkable oversight, however, both parties (as well as both courts in *Morrison*, both courts in *Bubble Room*, and the court in *Fior D'Italia*) forgot about I.R.C. § 6205, the provision which actually deals with the collection of a FICA tax underpayment from the employer.

Section 6205 delegates to the Secretary of the Treasury the power to prescribe regulations to allow for an interest-free "adjustment" where an employer has underpaid the its share of the FICA tax, *id.* § 6205(a), as well as the power to prescribe *the manner of the assessment and collection* of amounts which are not eligible for such an adjustment, *id.* § 6205(b). The Secretary's regulation provides that any employer who underpays its share[2] of the FICA tax is responsible for reporting and correcting the error when it comes to the employer's attention and for paying the amount still due, Treas. Reg. § 31.6205–1(a)(1) and (4), but it does not allow for such an adjustment to be made after the return period in which the employer discovered the error, *id.* § 31.6205–1(b)(2)(i) and (b)(ii), or after the IRS issues a notice and demand based upon an assessment against the employer, *id.* § 31.6205–1(a)(6). When the IRS has already issued a notice and demand, the regulation specifies that the employer must pay the amount due "in accordance with" the notice and demand. *Id.; see also* Rev. Rul. 75–464, 1975–2 C.B. 474.

So Congress delegated to the Secretary the power to issue regulations governing the assessment and collection of a FICA tax underpayment where adjustment is not appropriate (as it is not in this case, for Coco Pazzo knew of its underpayment and failed to report it before the IRS issued a notice and demand), and the Secretary responded with a regulation which describes an assessment against and a collection from the employer without mentioning assessments against individual employees. This is as clear a statement as any that the IRS need not assess employees before assessing the employer. We owe this regulation "tremendous deference," *Bankers Life and Casualty Co. v. United States*, 142 F.3d 973, 979 (7th Cir.1998), and since we are aware of nothing in the statutes

---

2. The regulation also speaks to the employee's share of the tax and states that an employer who knows prior to filing the appropriate returns that it has withheld too little money from its employees to cover their share of the tax is responsible for covering their share. Treas. Reg. § 31.6205–1(b)(1). Coco Pazzo relied on its employees' § 6053(a) reports rather than its actual knowledge of the tips it redistributed to them and therefore withheld too little money from the employees' paychecks, resulting in an underpayment of their share of the FICA tax in addition to an underpayment of its own share. The IRS has not, however, attempted to collect the employees' share of the tax from Coco Pazzo.

which contradict it, we defer to it completely. The tax code imposes the employer's share of the FICA tax separately from the employee's share, I.R.C. §§ 3101 and 3111; *see also Morrison,* 118 F.3d at 1529; *Bubble Room,* 159 F.3d at 566, and it also provides for different treatment of underpayments of those taxes, I.R.C. §§ 3121(q) and 6652(b). There is no good reason to think that Congress did not mean to allow an employer assessment before or without an employee assessments.

Indirect confirmation of this conclusion comes by way of the Internal Revenue Service Restructuring and Reform Act of 1998 (the 1998 Act). Some background first: the IRS does not rely solely on audits and assessments to raise FICA revenues. Pursuing delinquent taxpayers is only half of its plan; the other half involves before-the-fact efforts to encourage accurate employee tip reporting. After the IRS's unpopular Tip Rate Determination Agreement (TRDA) program (which required restaurants to estimate tip rates and convince three-quarters of their tipped employees to report tips at that rate) failed to take off, the IRS and the restaurant industry came up with the Tip Reporting Alternative Commitment (TRAC) program. James J. Hall, *IRS Commissioner Heralds Success of Restaurant Worker Tip Program,* WEST'S LEGAL NEWS, Nov. 1, 1995, *available in* 1995 WL 910935. Participation in TRAC, as in TRDA, is voluntary, and restaurants who sign a TRAC agreement with the IRS agree to educate their employees about tax reporting, establish procedures to ensure accurate tip reporting, and comply with all federal tax requirements, in exchange for which the IRS agrees to issue a § 3121(q) notice and demand to a restaurant *only after* an employee volunteers his or her underreporting *or only after* the IRS discovers underreporting during its examination of an employee. *See Bubble Room,* 36 Fed. Cl. at 678 n. 13 (quoting Market

Segment Understanding Guidelines with the Food Service Industry—Tip Reporting Alternative Commitment, IRS Pos. (CCH) ¶ 230,001, at 132,501 (July 26, 1995)).

Coco Pazzo does not address TRAC in any of its briefs, but its position must be that restaurants who sign a TRAC agreement are giving the IRS a free lunch, since Coco Pazzo firmly believes that the IRS can never issue a § 3121(q) notice and demand to an employer without first dealing with the employees. What is interesting about the TRAC program, however, is Congress's rather than Coco Pazzo's reaction to it. In response to reports that the IRS was threatening restaurants with an audit if they did not participate in the supposedly voluntary TRAC program, the House placed a provision in the 1998 Act preventing the IRS from making such threats in the future. *See, e.g.,* H.R.Rep. No. 105–364(I), at 199–200 (1997). That provision now resides at I.R.C. § 7612.

The legislative history of § 7612 establishes conclusively that Congress knew how the TRAC program operates and that it was specifically aware of the exchange on which the TRAC program is premised—the employer's promise to educate its employees and comply with the law for the IRS's promise not to issue a § 3121(q) notice and demand *unless* it first finds tip underreporting by an individual employee. H.R. Conf. Rep. No. 105–599, *reprinted in* 1998 Special Edition of the U.S.C.A., at 142 (1998); S.Rep. No. 105–174, at 178–79 (1998); H.R. Rep. 105–364(I), at 199. This indicates that Congress acknowledged the IRS's power to make assessments against employers before or without making assessments against employees, as it would be curious indeed if the House Report, Senate Report, and Conference Committee Report all relied on the same erroneous view of the law. It would be stranger still if Congress thought abusive or illegal the IRS's practice of making assessments against employers before or without mak-

ing assessments against employees and did not correct that abuse in its major reform of the IRS in 1998, when it addressed the IRS's other bad TRAC behavior. *Cf. Bubble Room,* 159 F.3d at 568 (Plager, J., dissenting). We are aware, of course, of the dangers inherent in inferring Congress's views from its silence or inaction, but everything underlying the 1998 Act buttresses our conclusion that the IRS may make assessments against employers before (or without) making assessments against individual employees, and we would be remiss if we did not point that out.

 Coco Pazzo does not, however, rest its proverbial hat on the language of the FICA provisions alone. It argues for an "employee first" procedure primarily because if the IRS uses a restaurant-level aggregate assessment, the social security accounts of individual employees will not be credited (since the Social Security Administration figures the credits from wages reported by individual employees to the IRS) and, it argues, Congress did not intend for employers to pay the FICA tax unless their employees receive social security credit. Coco Pazzo, of course, has already agreed to pay its share of the FICA tax on the previously unreported tips of employees who were assessed for their share of the FICA tax and have thus received social security credit for earning those tips, so it might appear that Coco Pazzo brought this suit solely to vindicate its other employees' "rights" to social security credit. Were that the case, we would dismiss this suit. The government's failure to credit employee social security accounts does not harm the employer; only the underreporting employees suffer, and then only because of their fraud against the government. *See Morrison,* 118 F.3d at 1530. Standing to sue requires injury, *see, e.g., Clinton v. City of New York,* 524 U.S. 417, 118 S.Ct. 2091, 2099 & n. 15, 141 L.Ed.2d 393 (1998), which is another way of saying that Coco Pazzo cannot sue on behalf of its employees. Coco Pazzo avoids this problem by framing its social security argument a bit differently and using it for holistic statutory interpretation, turning to another part of the U.S.Code to inform the construction of provisions more obviously at issue.

This argument does have some intuitive appeal and might have carried the day if we lived in a country where an employee's social security benefits were drawn directly from an individual social security account funded by the employee's own FICA tax payments together with his or her employer's FICA tax payments. In such a country the necessary link between the deposits and the withdrawals would make it natural to think that the IRS could not collect FICA taxes without crediting employees' accounts.

In our system, however, neither the employee's share nor the employer's share of the FICA tax is deposited and invested on behalf of the employee. *Current* FICA taxes fund the benefits of *current* social security recipients; the FICA taxpayers of today are funding social security payments to the wage earners of yesterday. *See, e.g., Flemming v. Nestor,* 363 U.S. 603, 609, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). Accordingly, employees do not earn social security credits (called "quarters of coverage") in exchange for paying their share of the FICA taxes or for their employer's paying of its share: "eligibility for benefits, and the amount of such benefits, do not in any true sense depend on contribution to the program through the payment of taxes, but rather on the earnings record of the primary beneficiary." *Id.* Employees earn credit *solely* by earning wages. *See* 42 U.S.C. §§ 405(c)(2)(A), 413.

Perhaps Coco Pazzo is confused because an employee's wage earning *also* creates a FICA tax liability for the employee and employer, but the credit and the tax have

nothing else to do with each other. The tax funds today's social security payments while the credit earns the employee social security benefits in the future, benefits which need not bear *any* relation to the amount of FICA taxes the employee or employer paid into the system. An employee would not be denied social security credit if, for example, his or her employer went completely bankrupt and failed to pay the employer's share or the withheld employee's share of the FICA tax for the previous year. *See Calderon v. Witvoet,* 999 F.2d 1101, 1106 (7th Cir.1993). Likewise an employer would not be excused from paying its share of the FICA tax on an employee's wages if that employee died soon after beginning work on the theory that the employee would never actually collect social security benefits. The employer must pay simply because the tax code considers tips given by customers to be wages paid by the employer whether or not the employee accurately reports those tips to the employer, I.R.C. § 3121(q), it imposes on the employer the obligation to pay a tax on those wages, *id.* § 3111, and it requires the Secretary to collect that tax, *id.* §§ 6201(a), 6301. In short, there is no reason for us to excuse Coco Pazzo from its obligations simply because its employees have shirked theirs.

The IRS's motion for summary judgment is granted, and Coco Pazzo's motion for summary judgment is denied. It is so ordered.